## IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON

STATE OF TENNESSEE,        (

    Appellee,             (

v.                     (

JOHNNY M. HENNING,     (

    Appellant.         (

**FILED**

June 22, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

**FOR PUBLICATION**

**Filed: June 22, 1998**

Madison Criminal

Hon. Whit LaFon,
Judge

No. 02S01-9707-CC-00065

For State-Appellee:

John Knox Walkup
Attorney General & Reporter

Michael E. Moore
Solicitor General

Kenneth W. Rucker
Assistant Attorney General
Nashville, Tennessee

James G. Woodall
District Attorney General
Twenty-Sixth Judicial District
Jackson, Tennessee

Shaun A. Brown
Assistant District Attorney General
Jackson, Tennessee

For Defendant-Appellant:

Hughie Ragan
Jackson, Tennessee

## O P I N I O N

AFFIRMED.                                 DROWOTA, J.

We granted this appeal primarily to consider two issues: 1) whether the search warrant in this case is supported by probable cause and is otherwise valid; and 2) whether an appellate court reviewing a pretrial ruling that a search warrant was validly executed may consider the entire record, including evidence submitted at trial, in addition to evidence submitted at the pretrial suppression hearing. We have determined that the search warrant issued in this case is supported by probable cause and free from other defects. As to the second issue, which is a question of first impression in Tennessee, we have determined that an appellate court may consider the entire record, including the evidence submitted at trial, in evaluating the correctness of a pretrial ruling that a search warrant was validly executed. Accordingly, for the reasons that follow, the judgment of the Court of Criminal Appeals upholding the trial court's denial of the defendant's motion to suppress is affirmed.

## FACTUAL BACKGROUND

On October 21, 1993, Johnny Henning was arrested at his home and police seized .9 grams of cocaine, an unknown quantity of Mannitol, a substance commonly mixed with cocaine, and a set of scales. The arrest, search, and seizure was the culmination of several hours of surveillance of Henning's home by Officer Mark Caldwell of the Madison County Sheriff's Department and a member of the Drug Task Force of the 26th Judicial District.

After receiving information from a confidential informant that Henning was selling crack cocaine, Officer Caldwell positioned himself in a field across the road

from Henning's residence at approximately 3:00 p.m. Between 3:00 p.m. and 4:20 p.m. that day, Caldwell observed three cars arrive separately at Henning's house. Each time, Caldwell observed Henning approach the car, talk to the occupants for a short time, walk to the side of his house, return about four seconds later, again approach the car, and then exchange something with the occupants. Following the last exchange at approximately 4:30 p.m., Henning left his home on foot.

During his absence, Officer Caldwell telephoned Captain Thomas A. Coleman, described the transactions he had observed, and directed Capt. Coleman to obtain a search warrant for Henning's residence. Capt. Coleman prepared an affidavit, obtained the warrant, returned to a location near Henning's residence with several other officers, and waited for Caldwell to call for execution of the warrant.

Henning returned at 5:00 p.m, and thereafter, Caldwell observed two more exchanges before Henning again departed his residence in a vehicle at approximately 6:30 p.m. Caldwell maintained his position in the field across from Henning's home for about twenty minutes after Henning departed, but eventually crossed the road and positioned himself so that he could observe the west side of the house to which Henning had walked before each prior exchange had occurred.

From that vantage point, Caldwell had observed three different vehicles arrive at Henning's residence. Each time the occupants remained inside their cars

for a short time before approaching Henning's house and knocking on the door. Each time the visitors left as soon as Henning's wife came to the door and told them, "Johnny's not here."

Henning returned home at approximately 8:30 p.m., and shortly thereafter, another car arrived at his residence. Henning came outside and spoke to the driver and passenger of the vehicle. Caldwell observed Henning go to a concrete block at the side of the house. During this activity, Caldwell crawled into Henning's yard, and was lying on the ground beside an abandoned car on the west side of the house. Caldwell said he had been "very, very close" to Henning and the occupants of the car. At that point, Caldwell called for backup assistance from Capt. Coleman and the other officers located a short distance from Henning's residence. After making the call, Officer Caldwell stood and approached the defendant who was engaged in conversation with one of the occupants of the car. Henning began to flee toward his residence, and Caldwell pursued him, stating that he knew it would be difficult to "keep up with where the drugs were going to be . . . if they got in the house. . . ." Caldwell seized Henning as he was entering his residence, and they fell into the doorway of Henning's residence.[1]

Once he had apprehended Henning, Caldwell announced he was a police officer and told the defendant he had a search warrant. Caldwell ordered Henning

_____

[1]Apparently one of the occupants of the car involved in the exchange fled the scene on foot and the other departed the scene in the car.

and the other occupants of the house to sit down. Henning sat on the sofa, and Caldwell observed him throw something on the carpet and try to kick it under the couch. Caldwell recovered the object, and a subsequent laboratory analysis revealed the substance to be .9 grams of cocaine. Other officers assisting in the execution of the search warrant found Mannitol, a substance often combined with cocaine, and a set of scales, inside a drainage pipe on the west side of the house to which the defendant had walked before each transaction occurred.

The defendant moved pretrial to suppress the evidence seized as a result of the search. The motion was denied, and the case proceeded to trial. The jury found the defendant guilty of possession of cocaine with intent to sell, possession of cocaine with intent to deliver, and possession of drug paraphernalia. The trial court merged the two cocaine possession verdicts into a single conviction. The defendant was sentenced to twelve years for the felony possession conviction and eleven months, and twenty-nine days for the misdemeanor drug paraphernalia conviction. The sentences were ordered to be served concurrently. The defendant appealed, raising numerous issues. The intermediate court affirmed the convictions, but remanded for resentencing because of a conflict between the bench ruling and the judgment as to the applicable sentencing range. Thereafter, we granted permission to appeal and now affirm the judgment of the Court of Criminal Appeals.

## I. CONSTITUTIONAL VALIDITY OF THE SEARCH WARRANT

## A. Probable Cause

Initially, the defendant contends that the affidavit, upon which the search warrant was issued, did not establish probable cause because the affidavit failed to allege facts from which the credibility of the informant and the reliability of the information could be determined as is constitutionally required in Tennessee by this Court's decision in State v. Jacumin, 778 S.W.2d 430 (Tenn. 1989). The State first responds that the affidavit contained facts from which the magistrate could determine the credibility of the informant and the reliability of the information, and alternatively argues that any deficiencies in the affidavit were remedied by the independent police corroboration outlined in the affidavit in this case. We agree.

The Fourth Amendment [2] to the United States Constitution requires that search warrants issue only "upon probable cause, supported by Oath or affirmation." Article I, Section 7 of the Tennessee Constitution precludes the issuance of warrants except upon "evidence of the fact committed." Therefore, under both the federal and state constitutions, no warrant is to be issued except upon probable cause. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); State v. Jacumin, supra; Tenn. Code Ann. § 40-6-103 (1997 Repl.). Probable cause has been defined as a reasonable ground for suspicion, supported by circumstances indicative of an illegal act. Lea v. State, 181 Tenn. 378, 181 S.W.2d 351, 352 (1944).

---

[2] The Fourth Amendment is applicable to the states through the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 655, 81 S. Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961).

In Tennessee, a finding of probable cause supporting issuance of a search warrant must be based upon evidence included in a written and sworn affidavit. Tenn. Code Ann. 40-6-104 (1997 Repl.); Tenn. R. Crim. P. 41(c); Jacumin, 778 S.W.2d 432. Indeed, an affidavit containing allegations from which the magistrate can determine whether probable cause exists is an indispensable prerequisite to the issuance of a search warrant in this State. Id.; see also State ex rel. Blackburn v. Fox, 200 Tenn. 227, 230, 292 S.W.2d 21, 23 (Tenn. 1956). The affidavit must set forth facts upon which a neutral and detached magistrate, reading the affidavit in a common sense and practical manner, can find probable cause for the issuance of a search warrant. State v. Bryan, 769 S.W.2d 208, 210 (Tenn. 1989). To ensure that the magistrate exercises independent judgment, the affidavit must contain more than mere conclusory allegations by the affiant. Jacumin, 778 S.W.2d at 432; State v. Moon, 841 S.W.2d 336, 337 (Tenn. Crim. App. 1992). An affidavit may contain hearsay information and need not reflect the direct personal observations of the affiant. Jacumin, 778 S.W.2d at 432; State v. Melson, 638 S.W.2d 342, 354 (Tenn. 1982). However, under the Tennessee Constitution, an affidavit containing hearsay information supplied by a confidential informant can not support a finding of probable cause unless it also contains factual information concerning the informant's basis of knowledge and credibility. Jacumin, 778 S.W.2d at 432, 436. While independent police corroboration can make up deficiencies in either prong, we have recognized that "each prong represents an independently important consideration that must be separately considered and satisfied in some way." Id. Appellate courts reviewing the existence of probable cause to support issuance of a warrant may consider only

the affidavit and may not consider other evidence provided to or known by the issuing magistrate or possessed by the affiant. Jacumin, 778 S.W.2d at 432; Moon, 841 S.W.2d at 337.

Having delineated the guiding principles, we now consider whether the affidavit in this case sufficiently describes the informant's credibility and basis of knowledge. The affidavit, in pertinent part, provides as follows:

> Personally appeared before me, Capt. Thomas Coleman, who makes oath that he has probable cause for believing and does believe that Johnny Henning is in possession of the following described property, to-wit: illegal narcotics, crack cocaine, pictures, ledgers, tapes, or records of drug sales or records of proceeds therefrom . . . .
>
> Affiant has been provided information by a reliable informant whose reliability has been established by providing information which has resulted in several arrest[s] in the past. Said informant was in the company of a subject who stated the intention to obtain crack cocaine and did go to the above described residence and did enter the described residence and did display crack cocaine obtained within the residence. Investigators with the drug task force did observe five transactions of a type believed to be drug sales. The resident of the dwelling, Mr. Henning has two prior arrest for possession of drugs with intent to sale[sic], and a vehicle seizure for possession of drugs. These transactions were observed within the last 6 hours and the informant has been on the property within the last 72 hours.
>
> Affiant therefore asks that a warrant issue to search the person of Johnny Henning and the premises herein described . . . [for] illegal narcotics crack cocaine.

With respect to the informant's basis of knowledge, the affidavit contained specific allegations: "[s]aid informant was in the company of a subject who stated the intention to obtain crack cocaine and did go to the above described residence and did enter the described residence and did display crack cocaine obtained within the

–8–

residence." The affidavit also alleged that the informant had been on the premises in the last 72 hours. The informant's personal observation and knowledge of Henning's activities satisfies the basis of knowledge prong of Jacumin. See State v. Valentine, 911 S.W.2d 328, 330 (Tenn. 1995).

However, as the Court of Criminal Appeals recognized, the affidavit contains only a conclusory allegation regarding the informant's credibility: "a reliable informant whose reliability has been established by providing information which has resulted in several arrest[s] in the past." Although there is no specific allegation in the affidavit which, on its face, establishes the credibility of the informant, the independent police corroboration of the informant's tip, explained in the affidavit, is sufficient to establish the informant's credibility. As Judge Wade, writing for the Court of Criminal Appeals, stated:

> While the affidavit here contains nothing more than a conclusory attestment of the reliability of the informant, police had seen 'five transactions of what appeared to be drug sales.' Police learned that the defendant had two prior arrests for drug violations and vehicle seizure. That officers knew of the prior arrests and seizure, that they had placed his residence under surveillance for six hours within three days of the report by the informant, and that they had observed actions by the defendant consistent with the sale of illegal drugs, does provide the very kind of corroboration envisioned by the ruling in Jacumin.

We agree with the Court of Criminal Appeals that the independent police corroboration sufficiently established the informant's credibility, and the affidavit in this case was sufficient to support a finding of probable cause justifying issuance of the search warrant.

**B. General Warrant**

The defendant next contends that the search warrant is unconstitutional because it failed to adequately specify the items to be located during the search of the premises. The State responds that the search warrant adequately delineated the items for which a search had been authorized. We agree.

Under the Fourth Amendment a search warrant must contain a particular description of the items to be seized. See Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927). Likewise, Article I, Section 7 of the Tennessee Constitution prohibits general warrants, and, in addition, Tenn. Code Ann. § 40-6-103 (1997 Repl.), specifically requires that search warrants describe the property to be seized with particularity. See Lea v. State, supra; Hampton v. State, 148 Tenn. 155, 252 S.W. 1007 (1923).

The constitutional prohibition against general warrants is designed to limit governmental intrusion upon a citizen's privacy and property rights to only that shown to the magistrate to be necessary and to limit the discretion of the officer conducting the search. Marron, supra; Wayne R. LaFave, Search and Seizure, § 4.6(a) (3rd ed. 1996)(hereinafter "LaFave"). To satisfy the particularity requirement, a warrant "'must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized.'" State v. Meeks, 867 S.W.2d 361, 367 (Tenn. Crim. App. 1993) (quoting United States v. Cook, 657 F.2d 730, 733 (5th Cir. 1981). However, as this Court stated in Lea,

> [W]here the purpose of the search is to find specific property, it should
> be so particularly described as to preclude the possibility of seizing any
> other. *On the other hand, if the purpose be to seize not specified*

*property, but any property of a specified character which, by reason of its character, and of the place where and the circumstances under which it may be found, if found at all, would be illicit, a description, save as to such character, place and circumstances, would be unnecessary, and ordinarily impossible.*

181 Tenn. at 382-83, 181 S.W.2d at 352-53 (emphasis added).

The warrant issued in this case authorized a search for "crack cocaine, illegal narcotics, pictures, records, ledgers, tapes or items that tend to memorialize [sic] drug sales and proceeds therefrom." In our view, the warrant describes the character of the property subject to seizure with sufficient particularity "to enable the searcher to reasonably ascertain and identify the things which are authorized to be seized." See Melson, 638 S.W.2d at 353; State v. Meadows, 745 S.W.2d 886, 891 (Tenn. Crim. App. 1987). Accordingly, the warrant is not unconstitutionally general and the defendant's claim is without merit.

## C. Filing of the Affidavit

The defendant next contends that the warrant was invalid because the underlying affidavit was not attached to nor filed with the warrant. We disagree. While an affidavit must be retained in order to ensure subsequent judicial review of the probable cause determination, there is no statute or rule in Tennessee which requires an affidavit upon which a search warrant is issued to be attached or otherwise kept with the warrant. State v. Smith, 836 S.W.2d 137, 141 (Tenn. Crim. App. 1992). Rule 41(c), Tenn. R. Crim. P., contains mandatory recording and filing requirements for warrants, but not for affidavits. The affidavit is not considered part

of the search warrant in this State even if it appears on the same printed form as the warrant. <u>Minton v. State</u>, 186 Tenn. 541, 212 S.W.2d 373 (1948); <u>Hampton</u>, <u>supra</u>. Therefore, the fact that the affidavit here was not attached to the warrant is inconsequential. The magistrate maintained a copy of the affidavit and it was made a part of the record at the hearing on the defendant's motion to suppress. There is a printed reference on the search warrant to the affidavit made by Capt. Thomas Coleman. The affidavit reflects that it was sworn to before the general sessions court judge of Madison County on October 21, 1993, the same date that the warrant issued. This issue is without merit.

## II. MOTION TO SUPPRESS

### A. Appellate Review

Even assuming the validity of the search warrant, the defendant next contends that the trial court erred in denying his motion to suppress because the officers executing the warrant failed to comply with the federal and state knock and announce requirement before entering the defendant's home. Before considering the merits of this claim, we must first determine whether our review of this issue extends to the entire record or to only that proof offered at the hearing on the motion to suppress.

In this case, the trial court commented at the suppression hearing that the only substantial issue raised by the motion to suppress was the sufficiency of the search warrant affidavit. Because the sufficiency of a search warrant affidavit is to be determined from the allegations contained in the affidavit alone, the State offered no

proof at the suppression hearing. Only the defendant testified, and Henning said that Officer Caldwell did not "knock and announce," but simply "barged" into his home. However, at trial, the State offered the testimony of Officer Caldwell who related the circumstances of the defendant's arrest and the execution of the search warrant, which have been previously set forth herein. Henning contends that the Court of Criminal Appeals erred by considering the proof offered by the State at trial when evaluating the correctness of the trial court's ruling on the motion to suppress. According to the defendant, when evaluating a trial court's denial of a pretrial motion to suppress, an appellate court must only consider the evidence that was before the trial court at the hearing on the motion. The State, in contrast, argues that in conducting its review, an appellate court may and should consider the entire record, including evidence offered at trial.

It is well-settled in this State that courts reviewing a magistrate's finding of probable cause are limited to the allegations contained in the affidavit supporting issuance of the warrant. Indeed, we previously have reaffirmed and applied this rule in this opinion. However, our research has revealed no Tennessee decision regarding the evidence which an appellate court may consider when reviewing a pretrial ruling on a motion to suppress that does not relate to the validity of a search warrant. While this is a question of first impression in Tennessee,[3] other jurisdictions have considered the question, in a variety of contexts, and the majority rule is that

_____

[3]Seldom will this issue arise in Tennessee. The denial of a motion to suppress is very often followed by entry of a guilty plea. Therefore, if an appeal is taken pursuant to Tenn. R. Crim. P. 37, the record before the reviewing court will consist only of the evidence offered at the hearing on the motion to suppress. If a motion to suppress is granted, the prosecution is oftentimes terminated.

appellate courts may consider evidence adduced at trial in evaluating the correctness of a pretrial ruling on a motion to suppress. This rule is well established and uniformly followed by the federal courts. Carroll v. U.S., 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925) (warrantless search); U.S. v. Han, 74 F.3d 537, 539 (4th Cir. 1996) (warrantless search); U.S. v. Rico, 51 F.3d 495, 503-04 (5th Cir. 1995) (warrantless arrest); U.S. v. Villabona-Garnica, 63 F.3d 1051, 1056 (11th Cir. 1995) (warrantless entry); U.S. v. Trevino, 60 F.3d 333, 336 (7th Cir. 1995) (warrantless checkpoint stop); U.S. v. Martin, 982 F.2d 1236, 1240 (8th Cir. 1993) (warrantless patdown search); U.S. v. Thomas, 875 F.2d 559, 562, n.2 (6th Cir. 1989) (warrantless seizure); U.S. v. de Jesus-Rios, 990 F.2d 672, 674, n. 2 (1st Cir. 1993) (pretrial identification); U.S. v. Corral, 970 F.2d 719, 723 (10th Cir. 1992) (investigatory stop and warrantless search); Washington v. U.S., 401 F.2d 915, 920, n. 19 (D.C. Cir. 1968) (warrantless arrest); Rocha v. U.S., 387 F.2d 1019, 1020 (9th Cir. 1967) (warrantless arrest).

Likewise, most state courts addressing the issue, again in a variety of contexts, also have held that an appellate court may consider the entire record when reviewing the correctness of a trial court's ruling on a pretrial motion to suppress. State v. Randall, 385 P.2d 709, 710 (Ariz. 1963) (warrantless arrest); State v. Whitaker, 578 A.2d 1031, 1033 (Conn. 1990) (voluntariness of confession); People v. Gilliam, 670 N.E.2d 606, 614 (Ill. 1996) (voluntariness of statement); Lamb v. State, 348 N.E.2d 1, 3 (Ind. 1976) (voluntariness of statement); State v. Jackson, 542 N.W.2d 842, 844 (Iowa 1996) (inventory search); State v. Chopin, 372 So.2d 1222, 1224, n. 2  (La. 1979) (investigatory stop); State v. Parkinson, 389 A.2d 1, 10 (Me.

1978) (warrantless arrest); State v. Sharp, 702 P.2d 959, 961 (Mont. 1985) (investigatory stop); State v. Huffman, 148 N.W.2d 321, 322 (Neb. 1967) (warrantless search); State v. Martinez, 612 P.2d 228, 231 (N.M. 1980) (warrantless arrest and search); Commonwealth v. Chacko, 459 A.2d 311, 318, n. 5 (Pa. 1983) (voluntariness of statement); State v. Keeling, 233 N.W.2d 586, 590, n.2 (S.D. 1975) (pretrial identification); State v. Bruno, 595 A.2d 272, 273 (Vt. 1991) (investigatory stop); Carroll v. State, 938 P.2d 848, 850 (Wyo. 1997) (warrantless arrest); Henry v. State, 468 So.2d 896, 899 (Ala. Crim. App. 1984) (voluntariness of statement); Sayers v. State, 487 S.E.2d 437, 438 (Ga. App. 1997) (investigatory stop); State v. Kong, 883 P.2d 686, 688 (Hawaii App. 1994) (voluntariness of statement); State v. Sims, 952 S.W.2d 286, 290 (Mo. App. 1997) (pretrial identification); Woodson v. Commonwealth, 491 S.E.2d 743, 745 (Va. App. 1997) (warrantless search). But see contra Trusty v. State, 521 A.2d 749, 755 (Md. 1987) (warrantless arrest); Commonwealth v. Doulette, 609 N.E.2d 473, 474 (Mass. 1993) (warrantless search); People v. Kaigler, 118 N.W.2d 406, 409 (Mich. 1962) (warrantless search); State v. Buzzard, 461 S.E.2d 50, 58 (W.Va. 1995) (warrantless search); People v. Breault, 273 Cal. Rptr. 110, 117 (Cal.App. 4 Dist. 1990) (warrantless search); People v. Braithwaite, 568 N.Y.S.2d 135, 136 (N.Y.A.D. 2 Dept. 1991) (investigatory stop); Alexander v. State, 305 P.2d 572, 576 (Ok. Crim. App. 1956) (voluntariness of statement); Smith v. State, 840 S.W.2d 689, 691 (Tex. App. 1992) (investigatory

stop); <u>see</u> <u>generally</u> LaFave, § 11.7(d).[4]


We previously have recognized that when suppression of evidence seized pursuant to a search warrant is advocated, the burden is upon the accused to prove by a preponderance of the evidence: (1) the existence of a legitimate expectation of privacy in the place or property from which the items sought to be suppressed were seized; (2) the identity of the items sought to be suppressed; and (3) the existence of a constitutional or statutory defect in the search warrant or the search conducted pursuant to the warrant. <u>State v. Evans</u>, 815 S.W.2d 503, 505 (Tenn. 1991); <u>State v. Harmon</u>, 775 S.W.2d 583, 585-86 (Tenn. 1989). Conversely, if suppression of evidence seized without a warrant is sought, the burden is upon the State to prove that the search and seizure was conducted pursuant to one of the exceptions to the warrant requirement. <u>Id</u>. These principles are important and *must* guide the trial court's decision upon a pretrial motion to suppress. However, in our view, these principles do not require an appellate court, or a trial court considering a motion for new trial, to ignore trial evidence which reinforces or negates the correctness of the pretrial ruling on the motion. To hold otherwise would exalt form over substance.

---

[4]Though none of these decisions address the specific question at issue in this appeal - the evidence which may be considered by an appellate court reviewing a pretrial ruling that a search warrant was validly executed - the general principle is the same. Where, as here, a defendant attempts to suppress evidence seized pursuant to a warrant on the grounds that the State failed to comply with the knock and announce rule, the State must offer proof to establish an exception to the knock and announce rule. Likewise, when suppression of evidence seized in a warrantless search is sought, the State must offer proof to establish that the search was conducted pursuant to an exception to the warrant requirement. In contrast, where evidence is seized pursuant to a warrant, and the defendant seeks suppression on the <u>sole</u> basis that the issuing judge erred in finding probable cause to support the warrant, the only evidence which may be presented by the State is the affidavit supporting issuance of the search warrant The State may not offer extrinsic evidence to bolster the allegations in the affidavit. Likewise, appellate courts reviewing a finding of probable cause are limited to the allegations contained in the affidavit supporting issuance of the warrant. Our holding herein does not alter nor abrogate this long-standing rule of criminal procedure.

–16–

Certainly, a defendant should not be convicted upon evidence that was seized in violation of the Fourth Amendment's protection against unreasonable searches and seizures simply because the illegality is established by proof offered at trial, rather than proof offered at the suppression hearing. Likewise, if proof adduced at trial establishes a lawful search or seizure, the evidence should not be excluded simply because the proof at the suppression hearing did not establish its legality. This is particularly true in light of the primary purpose of the exclusionary rule which is to deter police misconduct. State v. Huddleston, 924 S.W.2d 666, 676 (Tenn. 1996). Suppressing evidence *lawfully* seized simply because the legality of the seizure was established by proof introduced at trial, rather than proof introduced at the suppression hearing, in no way furthers the purpose of the rule and could perhaps be inimical to prudent law enforcement practices.

The Tennessee Rules of Appellate Procedure are to "be construed to secure the just, speedy, and inexpensive determination of every proceeding on its merits." Rule 1, Tenn. R. App. P. To that end, the appellate courts of this State are authorized to "grant the relief on the law and facts to which the party is entitled or the proceeding otherwise requires. . . ." Rule 36(a), Tenn. R. App. P. In our view, these rules contemplate that allegations of error should be evaluated in light of the entire record. Accordingly, we hold that in evaluating the correctness of a trial court's ruling on a pretrial motion to suppress, appellate courts may consider the proof adduced both at the suppression hearing and at trial.

Our holding with regard to the evidence which may be considered by an appellate court does not modify the applicable *standard of review*, which we recently

clarified in State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). We reiterate that an appellate court should uphold a trial court's decision on a motion to suppress, unless the evidence in the record preponderates against the finding. "Questions of credibility of witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Id. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence, as well as all reasonable and legitimate inferences that may be drawn from the evidence. Id. Upon consideration of the entire record in this case, we conclude, for the reasons that follow, that the evidence does not preponderate against the trial court's denial of the defendant's motion to suppress.

## B. Knock and Announce

Pursuant to constitutional and statutory mandates, before an officer executing a search warrant makes a forced entry into an occupied residence, the officer generally must knock on the door of the residence and announce his or her authority and purpose. Wilson v. Arkansas, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995); Tenn. R. Crim. P. 41(e); State v. Lee, 836 S.W.2d 126 (Tenn. Crim. App. 1991). To comply with this rule, officers generally must (a) identify themselves as law enforcement officials and b) explain the purpose of their presence, i.e. the execution of a search warrant. Id. If the officer is not admitted to the residence after giving proper notice, the officer is authorized to "break open any door or window . . ., or any part thereof, . . . to the extent that it is reasonably necessary to execute the warrant and does not unnecessarily damage the property." Tenn. R. Crim. P. 41(e). This long standing principle derives from the common law which generally protected a man's house as "his castle of defense and asylum." Wilson, 514 U.S. at 931, 115

S.Ct. at 1916. The purpose of the "knock and announce" rule is threefold. It provides protection from violence, both to the occupants of the residence and to the entering law enforcement officers. Secondly, it protects the privacy interest that is inherent in the home, and finally, it protects against the needless destruction of private property. Richards v. Wisconsin, __ U.S. __, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997); Wilson, 514 U.S. at 930-32, 115 S.Ct. at 1917; Lee, 836 S.W.2d at 128.

However, the knock and announce requirement is not absolute. Compliance is not required if knocking and announcing would increase the officer's peril, or if an officer executing a warrant perceives indications of flight or indications that evidence is being destroyed. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); State v. Fletcher, 789 S.W.2d 565 (Tenn. Crim. App. 1990). These are exigencies excusing compliance. Id. Indeed, recently, the United States Supreme Court specifically held that law enforcement officials executing a search warrant may initiate a "no-knock" entry, if they have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances of a case would be "dangerous or futile, or that it would inhibit the effective investigation of the crime by . . . allowing the destruction of evidence." Richards, __ U.S. __, 117 S.Ct. at 1421-22.

Applying these guiding principles to the facts of this case we agree with the Court of Criminal Appeals that under the particular circumstances of this case, compliance with the rule was not required. Here, Officer Caldwell testified that he was hiding a short distance away and observed Henning complete a drug transaction just outside his home. After calling for back up assistance, Officer Caldwell decided

to execute the search warrant. When he stood and approached the defendant, Henning fled toward his residence, and Caldwell pursued him, stating that he knew it would be difficult to "keep up with where the drugs were going to be . . . if they got in the house. . . ." Caldwell seized Henning as he was entering his residence, and they fell into the doorway of Henning's residence. Officer Caldwell then announced he was a police officer, with a search warrant, and ordered Henning to sit on the couch. Henning sat down and attempted to kick crack cocaine under the sofa. Officer Caldwell recovered the substance. These circumstances establish both that the defendant fled and that Officer Caldwell reasonably suspected that the evidence would be destroyed if he did not apprehend Henning before he retreated inside his home. Considering these circumstances the officer's failure to formally comply with the "knock and announce" rule was excused in this case by the exigencies involved.

Moreover, the defendant's warrantless arrest in this case was justified. A police officer may make a warrantless arrest upon probable cause that a felony has been committed. Tenn. Code Ann. § 40-7-103(a)(4) (1997 Repl.). Probable cause exists if the facts and circumstances within the officer's knowledge at the time of the arrest, and of which the officer "had reasonably trustworthy information sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). While warrantless felony arrests inside a home are generally prohibited by the Fourth Amendment absent probable cause and exigent circumstances, Payton v. New York, 445 U.S. 573, 583-590, 100 S.Ct. 1371, 1378, 1382, 63 L.Ed.2d 639 (1980); State v. Clark, 844 S.W.2d 597, 599 (Tenn. 1992), in this case, both probable cause and exigent circumstances supported the warrantless

arrest. Probable cause arose from the confidential informant's tip, significant first-hand corroboration of the tip by Officer Caldwell, and Officer Caldwell's up-close observation of the last of what appeared to be cocaine sales. Exigent circumstances arose when the defendant fled upon Officer Caldwell's approach. See U.S. v. Santana, 427 U.S. 38, 42-43, 96 S.Ct. 2406, 2409-10, 49 L.Ed.2d 300 (1976) (hot pursuit of a fleeing felon justified warrantless arrest inside home). The record demonstrates that both the execution of the search warrant and the warrantless arrest in this case were constitutionally sound. Accordingly, after reviewing the record, we conclude that the evidence does not preponderate against the trial court's denial of the defendant's motion to suppress.

## CONCLUSION

For the reasons previously stated, we conclude that the search warrant in this case was supported by probable cause and was free from other defects. Moreover, upon consideration of the evidence in this record, we have also determined that the trial court appropriately denied the defendant's pretrial motion to suppress. Accordingly, the judgment of the Court of Criminal Appeals upholding the trial court's denial of the defendant's motion to suppress and the judgment of conviction is affirmed.

We also affirm the judgment of the Court of Criminal Appeals in all other respects and accordingly remand this cause to the trial court for resentencing because of a conflict between the bench ruling and the judgment as to the applicable sentencing range. In imposing the appropriate sentence, the trial court should

consider the terms of Tenn. Code Ann. § 40-35-106, make any factual determinations necessary, and specify the applicable sentencing range.

_____
FRANK F. DROWOTA, III,
JUSTICE

**Concur:**
Anderson, C.J., and Holder, J.

Separate Concurring Opinion By:
Birch, J. and Reid, Sp. J.