# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### September 15, 2021 Session

## DAYSPARKLES OLIVER v. TENNESSEE DEPARTMENT OF SAFETY AND HOMELAND SECURITY

**Appeal from the Chancery Court for Davidson County**
**No. 18-0639-I, 18-0657-I   Patricia Head Moskal, Chancellor**

———————————————————

### No. M2021-00121-COA-R3-CV

———————————————————

Narcotics officers seized two vehicles and approximately $23,000 in U.S. currency while executing a search warrant at a residence.  An administrative law judge ordered the Tennessee Department of Safety and Homeland Security to return the seized property to the purported owner.  The judge determined that the search warrant was issued without probable cause, resulting in an illegal seizure.  And, if not, the Department failed to prove that it strictly complied with the forfeiture statutes.  The Department petitioned for judicial review.  After reviewing the administrative record, the chancery court reversed in part, vacated in part, and remanded the administrative decision for further proceedings.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY W. ARMSTRONG, JJ., joined.

Herbert S. Moncier, Knoxville, Tennessee, for the appellant, DaySparkles Oliver.

Herbert H. Slatery III, Attorney General and Reporter, Andrée Sophia Blumstein, Solicitor General, and Miranda Jones, Assistant Attorney General, for the appellee, Tennessee Department of Safety and Homeland Security.

# OPINION

## I.

### A.

The narcotics unit of the Knox County Sheriff's Department suspected that Victor Hines was involved in illegal drug activity. As part of the investigation, officers arranged a controlled drug purchase. A confidential informant purchased cocaine from Mr. Hines three times at a residential address on Woodland Avenue. As a result, the officers obtained a warrant to search the home. They found six ounces of cocaine, two ounces of powder cocaine, and two firearms at that address. This discovery led a judge to issue three warrants for Mr. Hines's arrest.

A short time later, officers made two more controlled drug purchases from Mr. Hines at another residential location—818 Vermont Avenue. Mr. Hines's girlfriend, DaySparkles Oliver, owned the 818 Vermont Avenue property. Mr. Hines owned an adjacent vacant lot under a known alias.

The officers obtained a warrant to search both 818 Vermont Avenue and the adjacent lot. On May 10, 2017, the officers executed the warrant. Both Mr. Hines and Ms. Oliver were present. The search uncovered 59 Schedule II pills, $23,145 in U.S. currency, and miscellaneous drug paraphernalia. Mr. Hines was arrested. In addition to the contraband, the officers seized the currency, a Nissan Juke, and a Chevrolet Impala. *See* Tenn. Code Ann. § 53-11-451(a)(4), (a)(6)(A) (2022).

The seizing officer applied for forfeiture warrants for the seized property. *See id.* § 40-33-204(b)(2) (2018).[1] Based on the officer's sworn affidavit, a general sessions judge found probable cause to believe that the seized property was subject to forfeiture under Tennessee law. *See id.* § 40-33-204(c)(1)(A). Ms. Oliver was the registered owner of the Nissan Juke. A public records search for the owner of the Chevrolet Impala was returned "not found." The judge found probable cause to believe that both Mr. Hines and Ms. Oliver had an ownership interest in the Nissan Juke and that their interests were subject to forfeiture under Tennessee law. *See id.* § 40-33-204(c)(1)(B). The judge also found probable cause to believe that Mr. Hines had an ownership interest in the Chevrolet Impala and that his interest was subject to forfeiture under Tennessee law. *See id.* § 40-33-204(d).

The seizing officer sent the forfeiture warrants and the supporting documents to the Tennessee Department of Safety and Homeland Security. *See id.* § 40-33-204(g). On June 5, 2017, the Department notified Ms. Oliver that a forfeiture warrant had been issued

---

[1] After the property was seized, the General Assembly amended the forfeiture warrant statute. *See* 2018 Tenn. Pub. Acts 689. We apply the version of the statute in effect at the time of the seizure.

against the Nissan Juke and the currency. *See id.* Ms. Oliver filed a timely written claim and requested a forfeiture hearing. *See id.* § 40-33-206 (2018).

As for the Chevrolet Impala, the Department initially only notified Mr. Hines about the forfeiture proceedings. But after learning of Ms. Oliver's ownership interest, it also sent a notice to Ms. Oliver.[2] *See id.* § 40-33-204(g). Shortly thereafter, Ms. Oliver submitted a second written claim and petitioned for a hearing. *See id.* § 40-33-206. This time, in lieu of a cost bond, Ms. Oliver submitted a uniform civil affidavit of indigency.[3] *See id.* § 40-33-206(b).

The Department denied Ms. Oliver's request for indigent status, citing two defects in her affidavit. It was not notarized. And she had retained the services of an attorney, which disqualified her for indigent status under the Department's rules. *See* Tenn. Comp. R. & Regs. 1340-02-02-.07(5)(d) (2015) (listing requirements for an acceptable Pauper's Oath).

The Department notified Ms. Oliver that her second claim could not be processed as filed. *See* Tenn. Code Ann. § 40-33-206(b); Tenn. Comp. R. & Regs. 1340-02-02-.07(4)(a). She was given ten days to request a hearing or provide a cost bond. *See* Tenn. Comp. R. & Regs. 1340-02-02-.07(5)(f). Ms. Oliver opted for a hearing.

The Department set both requested hearings on the January 11, 2018 docket. The Department asserted that Ms. Oliver bore the initial burden of establishing her standing to contest the forfeiture. She disagreed, claiming that the Department was first required to prove strict compliance with the forfeiture statutes. Ms. Oliver raised other concerns in her pre-hearing pleadings. And shortly before the hearing, she notified the Department and the administrative judge that she planned to address the following issues at the hearing: (1) the qualifications of the administrative judge; (2) the standing issue; (3) the Department's strict compliance with the forfeiture statutes; (4) the validity of the search warrant; and (5) the merits of the seizure.

B.

At the outset of the hearing, the court heard argument from counsel concerning whether Ms. Oliver's second claim was valid. The Department maintained that Ms. Oliver's claim was invalid because she did not submit a cost bond or an acceptable

---

[2] The Department received no timely written claims to the Chevrolet Impala, so a final forfeiture order was issued. But the forfeiture order was later rescinded at Ms. Oliver's request. She sent proof of her ownership interest to the Department and pointed out that the Department never sent her notice of the forfeiture proceedings against that vehicle. *See* Tenn. Code Ann. § 40-33-204(g).

[3] Ms. Oliver submitted an attorney surety bond with her first claim.

affidavit of indigency.  She did not meet the criteria for indigent status in the Department's rule.  Ms. Oliver responded that the Department's rule conflicted with state law and violated her constitutional right to counsel.

The court then heard proof of the Department's compliance with the forfeiture statutes.  Much of the proof focused on whether the Department provided Ms. Oliver with a notice of seizure and when it established a hearing date and set her claim on the docket.  The Department filed as exhibits the documentation it initially received from the seizing officer, the forfeiture warrant letters sent to Mr. Hines, and an internal "cover sheet."  Ms. Oliver's attorney also questioned the Department's attorney about various parts of the administrative record.  The administrative judge agreed to consider the attorney's responses as additional proof on this issue.

Ms. Oliver submitted countervailing proof both before and after the hearing.  Specifically, she filed an affidavit from her counsel and testimony from Pamela Patton, an administrative assistant at the Department, in an unrelated case.  Ms. Oliver's counsel reported that the contested case file in the Administrative Procedures Division did not contain a notice of hearing on Ms. Oliver's first claim.  In her testimony, Ms. Patton described the Department's routine practice for scheduling hearings in forfeiture actions.

To support her claim that the search was illegal, Ms. Oliver filed a transcript of the sworn testimony of Officer Chris Bryant.  The affidavit used to obtain the search warrant stated that two controlled drug purchases occurred at 818 Vermont Avenue.  Officer Bryant was the affiant.  At the preliminary hearing in the related criminal action, he testified that the purchases occurred in the driveway of the 818 Vermont Avenue property.  And Mr. Hines retrieved the cocaine from an outbuilding on his adjacent property.  Based on Officer Bryant's testimony, Ms. Oliver asserted that the officers did not have probable cause to search her residence.

C.

The administrative judge permitted both sides to file post-hearing briefs.  The Department's brief included 29 exhibits further documenting its compliance with the forfeiture statutes.  Ms. Oliver moved to strike the post-hearing exhibits.  She also filed a constitutional challenge to the rules the Department relied on to invalidate her second claim.  And she asked the administrative judge to allow her fifteen days to file an application for attorney's fees and costs.

On April 10, 2018, the administrative judge issued his ruling.  The judge concluded that the Department bore the initial burden of proving that the seizure was legitimate.  The judge also determined that the affidavit submitted in support of the search warrant did not establish probable cause.  Because the property was seized in violation of Tennessee law, the administrative judge granted Ms. Oliver's motion to suppress.  Alternatively, the judge

ruled that the Department failed to prove, by a preponderance of the evidence, that it had strictly complied with the forfeiture statutes. Specifically, the Department did not prove that it provided Ms. Oliver with a notice of seizure or that it set her claim on the docket by the statutory deadline. So the judge ordered the Department to return the seized property to Ms. Oliver.

Almost two months later, Ms. Oliver filed a document purporting to be both an application for attorney's fees and a motion for Rule 60 relief. She requested that the administrative judge "immediately (1) set a time for [Ms.] Oliver to file her application for attorney['s] fees and cost[s] and (2) schedule a time for [the Department] to respond[d] to [Ms.] Oliver's pending motions and schedule a hearing." According to Ms. Oliver, her motion for a qualified administrative judge remained pending as well as two post-hearing motions—a motion to dismiss and a motion to maintain a class action.[4] The administrative judge took no action.

D.

On June 8, 2018, Ms. Oliver filed a "Provisional Notice of Review" in chancery court. She asserted that the administrative decision "may not be" final because matters remained pending before the administrative judge. But if the decision was final, and if the Department sought judicial review, she asked the court to review "motions not ruled on by the Administrative Judge; constitutional questions; and issues not addressed by the Administrative Judge in the final order returning [her] property."

As Ms. Oliver anticipated, the Department petitioned for judicial review. And it moved to dismiss Ms. Oliver's provisional notice of review, arguing that it was not a legally adequate petition for judicial review.

Ms. Oliver moved to dismiss the Department's petition for lack of a final order. The court denied her motion. In open court, Ms. Oliver's counsel acknowledged "that all motions and other matters listed as still pending before the Administrative Law Judge [were] either moot or . . . waived." Based on that concession and the record as a whole, the court determined that the administrative order was a final decision.

The court ultimately dismissed Ms. Oliver's provisional notice of review with prejudice. It found that the notice was not a petition for judicial review under Tennessee Code Annotated § 4-5-322. So it lacked subject matter jurisdiction to grant Ms. Oliver's requested relief.

---

[4] The motion for a qualified administrative judge, motion to dismiss, and motion to maintain a class action do not appear in the administrative record.

After a final hearing on the Department's petition, the court reversed the agency decision in part, vacated in part, and remanded the case to the agency for further proceedings.[5]  The court ruled that the administrative judge erred in placing the initial burden of proof on the Department.  Standing was a threshold issue.  So it remanded for a determination of Ms. Oliver's standing to contest the forfeiture.

The court also identified both legal and evidentiary errors in the administrative decision.  In reviewing the search warrant, the administrative judge failed to identify all of the applicable legal principles.  The judge also erroneously relied on evidence outside the search warrant affidavit.  Properly viewed, the search warrant affidavit supported the finding of probable cause.  And the evidence preponderated against the factual basis for the administrative judge's alternative holding.  So the court reversed these portions of the agency decision.

The court also determined that the administrative order lacked necessary findings of fact and conclusions of law.  There were no findings of fact to support the administrative judge's conclusion that the Department failed to strictly comply with the forfeiture warrant statute.  Nor did the order include explicit findings and conclusions on the validity of Ms. Oliver's claim to the Chevrolet Impala.  So the court vacated the unsupported rulings and remanded for entry of an order with appropriate findings and conclusions.

## II.

We review forfeiture proceedings using the judicial review standards in the Uniform Administrative Procedures Act ("UAPA") as modified in the forfeiture statute.  *See* Tenn. Code Ann. §§ 4-5-322(h) (2021), 40-33-213(b) (2018).  Under the UAPA, the reviewing court may reverse or modify an agency decision only

> if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly

---

[5] We requested supplemental briefing from the parties on whether this Court has subject matter jurisdiction to review a lower court judgment remanding matters to an administrative agency for further action.  Having considered the parties' briefs, we are satisfied that we have subject matter jurisdiction to adjudicate this appeal.  The chancery court's judgment is final because it "conclusively determined all issues before the [chancery court] on their merits and left nothing for further judgment of that court." *Richardson v. Tenn. Bd. of Dentistry*, 913 S.W.2d 446, 460 (Tenn. 1995).  Judicial review of an administrative decision is "an original judicial review proceeding under Section 4-5-323 subject to review" by this Court. *Id.*

unwarranted exercise of discretion; or

(5)(A)(i) [U]nsupported by evidence that is both substantial and material in light of the entire record.

Tenn. Code Ann. § 4-5-322(h). Because this is a forfeiture case, we assess the sufficiency of the evidence using the preponderance of the evidence standard. *See id.* § 40-33-213(b); *McEwen v. Tenn. Dep't of Safety*, 173 S.W.3d 815, 819 (Tenn. Ct. App. 2005).

A.

Ms. Oliver argues that the chancery court lacked subject matter jurisdiction to review the administrative decision. Judicial review under the UAPA is generally limited to final decisions.[6] *See* Tenn. Code Ann. § 4-5-322(a)(1); *Dishmon v. Shelby State Cmty. Coll.*, 15 S.W.3d 477, 481 (Tenn. Ct. App. 1999). A final judgment is a judgment "that resolves all of the parties' claims and leaves the court with nothing to adjudicate." *Ball v. McDowell*, 288 S.W.3d 833, 836-37 (Tenn. 2009).

According to Ms. Oliver, the chancery court's finding that "three issues were not decided by the Administrative Judge[ ] established that the ruling of the administrative judge was not a 'final decision.'" Ms. Oliver misapprehends the chancery court's ruling.

The court determined that the administrative order lacked findings of fact and/or conclusions of law on standing, the validity of Ms. Oliver's second claim, and the Department's compliance with the statutory requirements for forfeiture warrants. The UAPA mandates that all "final [and] initial order[s] . . . include conclusions of law, the policy reasons therefor, and findings of fact for all aspects of the order, including the remedy prescribed." Tenn. Code Ann. § 4-5-314(c) (2021). This requirement is essential for effective judicial review of administrative decisions. *See Levy v. State Bd. of Exam'rs for Speech Pathology & Audiology*, 553 S.W.2d 909, 911-12 (Tenn. 1977) (discussing predecessor statute); *Swift Roofing, Inc. v. State*, No. M2010-02544-COA-R3-CV, 2011 WL 2732263, at *6 (Tenn. Ct. App. July 13, 2011). But it has no bearing on whether an administrative order is final.

We conclude that the administrative order was final. The administrative judge resolved the outstanding issues in the forfeiture proceeding, either explicitly or implicitly, when it ordered the Department to return the seized property. The lack of sufficient findings of fact and conclusions of law did not affect the finality of the order. So the court had subject matter jurisdiction to adjudicate the Department's petition.

---

[6] While the UAPA authorizes courts to review some interlocutory decisions, neither party suggests that the requirements for an interlocutory administrative appeal have been met. *See* Tenn. Code Ann. § 4-5-322(a)(1).

The same cannot be said for Ms. Oliver's provisional notice of review. We strive to give effect to the substance of a pleading according to the relief it seeks. *Tolliver v. Tellico Vill. Prop. Owners Ass'n, Inc.*, 579 S.W.3d 8, 16 (Tenn. Ct. App. 2019). As Ms. Oliver points out, there are no specific content requirements for a petition for judicial review. *United Steelworkers of Am. v. Tenn. Air Pollution Control Bd.*, 3 S.W.3d 468, 472 (Tenn. Ct. App. 1998). The only jurisdictional requirements are that the petition must be filed within 60 days of the agency's final decision and served on all parties of record before the agency. *Schering-Plough Healthcare Prods., Inc. v. State Bd. of Equalization*, 999 S.W.2d 773, 776 (Tenn. 1999) (citing Tenn. Code Ann. § 4-5-322).

Looking to the substance of Ms. Oliver's pleading, we cannot agree that it is an authorized method of seeking judicial review in a forfeiture action. The notice was conditional. It would only be effective **if** the administrative order was final **and if** the Department filed a petition for judicial review. Even then, Ms. Oliver only asked the court to review "motions not ruled on by the Administrative Judge; constitutional questions; and issues not addressed by the Administrative Judge in the final order." This was not a request for judicial review of a final agency decision. *See* Tenn. Code Ann. § 4-5-322(a)(1). As such, the chancery court properly dismissed it.

B.

The administrative judge erroneously rejected the Department's argument that Ms. Oliver bore the initial burden of establishing standing. *See id.* § 53-11-201(f)(1)(A) (2022). The claimant's standing is a threshold determination in a forfeiture case. *Tubbs v. Long*, 610 S.W.3d 1, 13 (Tenn. Ct. App. 2020).

On appeal, Ms. Oliver maintains that she established standing. The administrative judge found that she was the registered owner of both vehicles and the owner of the residence in which the seized currency was found. The evidence does not preponderate against these findings.

But Ms. Oliver only established ownership of the two vehicles, not the currency. Ownership of the residence in which the currency was found does not, by itself, establish ownership of the currency.[7] *See id.* at 10 ("Contrary to Ms. Tubbs's argument that she has standing to contest the forfeiture of the currency by virtue of her ownership interest in the searched residence, we emphasize that in order to contest the forfeiture proceeding, Ms. Tubbs was required to prove, among other things, that she has an ownership interest

---

[7] Ms. Oliver's reliance on the rebuttable presumption in Tennessee Code Annotated § 40-33-204(l) to argue otherwise is misplaced. This provision of the forfeiture warrant statute did not become effective until October 1, 2018. 2018 Tenn. Pub. Acts 689, 691.

in the seized property, i.e., the seized currency in this action."). So the chancery court did not err in remanding for a determination of standing.

C.

A sworn affidavit establishing the existence of probable cause is an "indispensable prerequisite" for a valid search warrant. *State v. Henning*, 975 S.W.2d 290, 294 (Tenn. 1998). "The affidavit must include facts from which the neutral and detached magistrate may determine, upon examining the affidavit in a commonsense and practical manner, whether probable cause exists." *State v. Tuttle*, 515 S.W.3d 282, 300 (Tenn. 2017). Those facts "must demonstrate a nexus between the criminal activity, the place to be searched, and the items to be seized." *Id.* A nexus may be shown "by the type of crime, the nature of the items, and the normal inferences where a criminal would hide the evidence." *Id.* (citation omitted).

"Probable cause is more than a mere suspicion but less than absolute certainty." *State v. Reynolds*, 504 S.W.3d 283, 300 (Tenn. 2016) (citations omitted). "[T]he strength of the evidence necessary to establish probable cause . . . is significantly less than the strength necessary to find a defendant guilty beyond a reasonable doubt." *Tuttle*, 515 S.W.3d at 300 (citation omitted). This is a practical, not a technical, standard. *Illinois v. Gates*, 462 U.S. 213, 231 (1983).

Given all the circumstances set forth in the affidavit, the magistrate's task is to decide whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238. "Reviewing courts afford 'great deference' to a magistrate's determination that probable cause exists." *Tuttle*, 515 S.W.3d at 300 (citation omitted). We will uphold a search warrant if the evidence viewed as a whole provided the magistrate with "a substantial basis for concluding that a search warrant would uncover evidence of wrongdoing." *Id.* at 299 (citation omitted); *see also Gates*, 462 U.S. at 238-39.

Officer Chris Bryant, a narcotics officer with the Knox County Sheriff's Department, submitted an affidavit seeking the issuance of a search warrant for 818 Vermont Avenue and an adjacent property, Parcel ID 081OG016. There was a single-family residence at 818 Vermont Avenue but only a storage building and two dog houses on the adjacent lot.

The affidavit provided relevant background information on Victor Hines a/k/a Victor Crawford, the owner of the adjacent property. The narcotics unit had been investigating Mr. Hines for some time. The officers previously discovered evidence of illegal activity, including cocaine, at another residence controlled by Mr. Hines. The affidavit listed three outstanding arrest warrants for Mr. Hines, including one charging Mr. Hines with possession of cocaine with intent to sell.

9

The affidavit detailed two recent controlled purchases of cocaine from Mr. Hines. In the presence of Officer Bryant, a confidential informant contacted Mr. Hines and arranged the purchases. On or about April 24 and May 5, 2017, the informant purchased cocaine from Mr. Hines "at 818 Vermont Avenue." The informant wore a recording device during both transactions. Officer Bryant "listened to and watched the recording of the [informant] purchasing the cocaine from [Mr.] Hines while at 818 Vermont Ave."

Based on his experience and training, Officer Bryant explained that "[d]rug traffickers very often place their assets derived from criminal activities in the names of other [p]ersons." Yet "[d]rug dealers actually . . . continue to use such assets and exercise dominion and control over this property, though titled in the names of others." They also "very often will hide contraband, proceeds of drug sales and records of drug transactions in secure locations such as . . . locations which they control but which are titled in the names of others, [or] residences of others who are participants in or aiders and abettors of the drug conspiracy . . . to conceal them from law enforcement officials."

Given these circumstances, Officer Bryant believed that it was more probable than not that Mr. Hines maintained both the residence at 818 Vermont Avenue and the adjacent vacant lot. Officer Bryant also believed it was more probable than not that Mr. Hines stored and sold cocaine at 818 Vermont Avenue and that evidence of illegal activity would be found on both properties.

The administrative judge ruled that the affidavit lacked sufficient facts to support a finding of probable cause. In reaching that conclusion, the administrative judge considered Officer Bryant's subsequent testimony about the location of the controlled purchases. But a reviewing court "may consider only the affidavit" when deciding "whether probable cause supported the issuance of a search warrant." *Tuttle*, 515 S.W.3d at 299 (quoting *Henning*, 975 S.W.2d at 295). The court "may not consider other evidence provided to or known by the issuing magistrate or possessed by the affiant" for this purpose. *Id.*

We conclude that the information in the affidavit, viewed as a whole, provided the magistrate with "a substantial basis for concluding that a search warrant would uncover evidence of wrongdoing" at 818 Vermont Avenue. *Id.* Mr. Hines was a known drug dealer. A confidential informant twice purchased cocaine from Mr. Hines at 818 Vermont Avenue. Mr. Hines owned an adjacent lot under a known alias. Law enforcement had recently discovered cocaine at another residence controlled by Mr. Hines. As Officer Bryant explained, drug dealers often hide contraband in locations which they control but which are titled in the names of others to conceal them from law enforcement. A sufficient nexus existed between the drugs and the property to be searched because the officers twice observed Mr. Hines sell illegal drugs to the informant at that location. *See id.* at 310.

10

Ms. Oliver contends that Officer Bryant made recklessly false statements in his affidavit and, without those false statements, the affidavit did not establish probable cause to search her residence. An affidavit may be impeached under two circumstances: (1) with proof of a false statement made with intent to deceive; or (2) with proof of "a false statement, essential to the establishment of probable cause, recklessly made." *Id.* at 308 (quoting *State v. Little*, 560 S.W.2d 403, 407 (Tenn. 1978)). Negligent or innocent mistakes will not invalidate a search warrant. *Id.* (citation omitted).

Ms. Oliver argues that the statements indicating that the informant purchased cocaine "from 818 Vermont Ave" and "at 818 Vermont Ave" were false and misleading. The sales actually occurred in the driveway of 818 Vermont Avenue. Mr. Hines never entered the residence. And he retrieved the cocaine from an outbuilding on the adjacent lot.

Our supreme court tells us that affidavits, such as this one, "must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity . . . have no proper place in this area." *Id.* at 309 (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)). "Hypertechnical judicial review" of an affidavit is discouraged. *Id.*

"Tested against this standard," we conclude that Ms. Oliver's proof falls short. *See id.* In common parlance, "818 Vermont Avenue" describes more than the residence at that address. It also encompasses the surrounding lot, including the driveway. The statements in the affidavit describing the location of the drug purchases were not false.

D.

"[I]n forfeiture proceedings, the governmental authority seeking forfeiture must present affirmative proof that it has complied with both the procedural and the substantive requirements in the forfeiture statutes." *State v. Sprunger*, 458 S.W.3d 482, 499-500 (Tenn. 2015). The administrative judge found that the Department failed to comply with two statutory requirements. *See* Tenn. Code Ann. §§ 40-33-203(c) (2018),[8] -207(a) (2018). It never provided Ms. Oliver with a notice of seizure. And it failed to set her claim for a hearing in a timely manner. The chancery court determined that the evidence preponderated against these findings. Ms. Oliver disagrees. On appeal, Ms. Oliver focuses solely on the proof with respect to her first claim.

---

[8] In her appellate brief, Ms. Oliver cites Tennessee Code Annotated § 40-33-213(e)(1) as the applicable legal authority. That provision did not become effective until October 1, 2018. 2018 Tenn. Pub. Acts 689.

1.  Notice of Seizure

When this seizure occurred, our forfeiture statutes required the seizing officer to provide a notice of seizure to "the person found in possession of the property." *Id.* § 40-33-203(c). Ms. Oliver was present when the property was seized. But the seizing officer only gave a notice of seizure to Mr. Hines. Yet there is evidence in the administrative record that Ms. Oliver ultimately received a copy of the notice of seizure for the currency and the Nissan Juke.

On June 5, 2017, the Department notified Ms. Oliver by certified mail that a forfeiture warrant had been issued against the Nissan Juke and the currency. The letter indicated that a copy of the notice of seizure was attached. And Ms. Oliver's former attorney acknowledged in correspondence with the Department that he had received a copy of the notice of seizure. Testimony from Ms. Patton confirmed that it was the Department's practice to send a copy of the notice of seizure with the forfeiture warrant letter.

To argue otherwise, Ms. Oliver relies on the recollections of Mr. Robert Broome, the attorney who represented the Department at the forfeiture hearing. In an unusual turn of events, the administrative judge allowed Ms. Oliver's attorney to question Mr. Broome about the contents of the administrative record. Although Mr. Broome explained that he was not personally involved in sending the letters, it was his understanding that the notice of seizure was not attached to Ms. Oliver's forfeiture warrant letter.

Evidence preponderates against a finding of fact if the evidence "support[s] another finding of fact with greater convincing effect." *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). On this record, the evidence preponderates against the administrative finding that Ms. Oliver never received a notice of seizure for the Nissan Juke and the currency.

2. Notice of Hearing

By statute, the Department is required to "establish a hearing date and set the case on the docket. . . [w]ithin thirty (30) days from the day the claim is filed." Tenn. Code Ann. § 40-33-207(a). The administrative judge found no evidence in the record that the Department complied with this statutory requirement. The chancery court did.

Ms. Oliver sent her first claim to the Department on July 6, 2017, by regular mail and facsimile. A claim is "filed" when it is actually received by the Department. Tenn. Comp. R. & Regs. 1340-02-02-.02(10) (2015). Ms. Oliver's claim was received at the earliest on July 6. The thirty-day period ended on August 5, which was a Saturday. By rule, the statutory deadline was extended until the next working day or August 7. *Id.* 1340-02-02-.04(2) (2015). On August 7, 2017, the Department sent Ms. Oliver a notice setting her claim for a hearing.

12

Ms. Oliver complains that the administrative record was assembled after the hearing. And there is no proof that the hearing notice was filed with the Administrative Procedures Division. She points out that the copy of the notice in the administrative record is not stamped "received." And an employee with the Administrative Procedures Division could not verify before the hearing that the Division had ever received a copy of the notice.

Our review is based on the evidence in the record. Tenn. Code Ann. § 4-5-322(g). The administrative judge certified and approved the contents of this record, which includes a timely hearing notice. So the evidence preponderates against the administrative finding that the Department failed to set Ms. Oliver's claim on the hearing docket within the allotted time.

E.

Finally, Ms. Oliver requests an award of attorney's fees on appeal pursuant to 42 U.S.C. § 1988. Section 1988 authorizes a state court to award reasonable attorney's fees to the prevailing party in a federal civil rights action. *Bloomingdale's By Mail Ltd. v. Huddleston*, 848 S.W.2d 52, 56 (Tenn. 1992). A party seeking judicial review of an administrative decision may be entitled to fees on this basis when the petition seeks relief from a violation of federal civil rights. *Wimley v. Rudolph*, 931 S.W.2d 513, 517 (Tenn. 1996).

It is questionable whether the provisional notice of review sought to enforce federal civil rights laws. *See N. Carolina Dep't of Transp. v. Crest St. Cmty. Council, Inc.*, 479 U.S. 6, 15 (1986) ("[O]nly a court in an action to enforce one of the civil rights laws listed in § 1988 may award attorney's fees."). But even assuming it did, Ms. Oliver is not entitled to an award of attorney's fees on this basis. Attorney's fees may only be awarded to a prevailing party. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Ms. Oliver did not prevail in her state court action.

**III.**

The administrative order was final. The court had subject matter jurisdiction to adjudicate the Department's petition for judicial review. The court properly dismissed the provisional notice of review because it did not seek the same relief. We also conclude that the agency decision violated constitutional and statutory provisions and was not supported by a preponderance of the evidence in the record. So we affirm the chancery court's judgment.

           s/ W. Neal McBrayer
           W. NEAL MCBRAYER, JUDGE

13