# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs October 1, 2002

## STATE OF TENNESSEE v. PAUL ANTHONY WRIGHT

**Direct Appeal from the Circuit Court for Obion County**
No. 1-201     William B. Acree, Jr., Judge

---

**No. W2001-02574-CCA-R3-CD  - Filed April 7, 2003**

---

The defendant, Paul Anthony Wright, pled guilty in the Obion County Circuit Court to manufacturing methamphetamine, a Class C felony, and was sentenced as a Range I, standard offender to three years, with ninety days to be served in the county jail and the remainder in a community corrections program.  As a condition of his guilty plea, the defendant sought to reserve as a certified question of law whether the trial court erred in finding there was probable cause to issue a search warrant for his property.  On appeal, the defendant argues that he properly certified the question for appeal whether the trial court erred in concluding that the search warrant sufficiently established probable cause for the search of his premises.  We agree with the defendant that the certified question is properly before this court and agree with the State that the trial court properly determined that the search warrant was adequate.  Accordingly, we affirm the order of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and JAMES CURWOOD WITT, JR., JJ., joined.

Charles S. Kelly, Sr., Dyersburg, Tennessee, for the appellant, Paul Anthony Wright.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and James T. Cannon, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On February 12, 2001, Union City Police Investigator Jeff Jackson, a member of the Twenty-Seventh Judicial District Drug Task Force Clandestine Lab Enforcement Team, asked fellow Drug Task Force member, Union City Police Officer Shawn Palmer, to help him track down the source of an odor associated with the manufacture of methamphetamine that he had detected in the Jackson

Street area of Union City. Upon investigating, the officers traced the odor to the defendant's residence on Maple Street. They also found plastic bottles and chemical residue associated with the manufacture of the drug in a field behind the defendant's house and in the defendant's pickup truck, which was parked on the street near his residence. Based on Officer Palmer's affidavit detailing the evidence the officers had uncovered, a search warrant was issued and executed on the defendant's property that same day, which led to the discovery of a methamphetamine laboratory in a shed beside the defendant's house.

On June 5, 2001, the Obion County Grand Jury charged the defendant in a three-count indictment with manufacture of methamphetamine, possession of methamphetamine with the intent to sell or deliver, and possession of drug paraphernalia. Thereafter, the defendant filed a motion to suppress any and all evidence obtained as a result of the search of his home and curtilage, contending that Officer Palmer did not have sufficient probable cause to seek the issuance of a search warrant for his home. Specifically, the defendant argued that Officer Palmer's affidavit was invalid because it failed to reveal the source of Investigator Jackson's knowledge that a methamphetamine laboratory could be detected in the vicinity of the defendant's home, or, assuming that Investigator Jackson's information had been supplied by a confidential informant, whether the informant was reliable and the basis for the informant's knowledge.

At the July 5, 2001, suppression hearing, the assistant district attorney general informed the trial court that no informant was involved in the case. Thereafter, Officer Palmer described the police investigation that led to the issuance of the search warrant for the defendant's property and the officers' subsequent execution of the warrant. He testified that early on the afternoon of February 12, 2001, Investigator Jackson asked if he would help him track down the source of odors associated with the manufacture of methamphetamine that he had noticed when he was in the Jackson Street area of Union City. Officer Palmer said he met Investigator Jackson at the police department and accompanied him to the area, where, "around by Fifth Street, around the corner from Jackson," they smelled the odors produced by the drug's manufacturing process. They then walked into an open field adjoining the defendant's property, where they saw, on the ground immediately behind the defendant's house, an item which they knew from their training and experience to be a "gas generator, something that's used in the last stage of process to manufacture methamphetamine."

As they continued walking to the end of Maple Street, where the defendant lived, the smell of ether, "which usually indicates the first phase in processing pills for the manufacture of methamphetamine," was "very, very strong." Inside the open camper of a truck, which was registered to the defendant and parked next to the defendant's property at the end of the street, they saw a plastic container that smelled of ether and contained a reddish substance and a "plastic-type jug which had chemical residue on it," the bottom of which appeared to have been eaten away by a chemical. Officer Palmer explained the significance of these latter items, testifying that the plastic container with the reddish material "indicate[d] that that was a part of the process where the tablets were crushed and then mixed with ether and other items to start processing the pills," and that the plastic jug with chemical residue "indicate[d] that a gas generator of hydrogen chloride gas had been mixed up and used at the end of the process to powder out or manufacture the methamphetamine

itself." Based on the above evidence, the officers returned to the police department and applied for a search warrant for the defendant's property.

Officer Palmer testified that when they returned to execute the warrant, the smell of "hydrogen chloride gas that's used at the end of the process to manufacture methamphetamine was so strong coming from [the defendant's] residence" that he and the other officers could smell it half a block away, where they parked their vehicles on South Fifth Street. Upon approaching the residence, they smelled the odors emanating from a shed beside the house and saw the defendant working on a vehicle outside the shed. Investigator Jackson walked up behind the defendant, put his hand on him, and identified themselves as police officers with a search warrant for his residence, at which point the defendant made the statement, "Everything I have -- there's nothing in the house. Everything I have is in the shed." According to Officer Palmer, the defendant was then given his Miranda warning and asked if he had any finished product on his person. The defendant first told them he had some in his pocket and then, when none was found, said that it was in the shed. At that point, the officers removed a sleeping bag covering the shed's doorway, which caused a cloud of hydrogen chloride gas to roll out of the shed. After the gas had dispersed, they entered the shed and found approximately one and a half grams of methamphetamine in a plastic baggie on top of a microwave, as well as items used in the manufacture of the drug.

At the conclusion of the hearing, the trial court denied the defendant's motion to suppress the evidence, finding that there had been probable cause to support the issuance of the search warrant and that the evidence had been "there for anyone to see." Subsequently, the defendant negotiated a plea agreement with the State whereby he agreed to plead guilty to the manufacture of methamphetamine, a Class C felony, in exchange for a three-year sentence with ninety days in confinement, and the dismissal of the remaining counts of the indictment. The transcript of the defendant's guilty plea hearing, as well as the written guilty plea agreement, clearly reflects that the defendant's guilty plea was also conditioned upon his right to appeal as a certified question of law whether the trial court erred in finding that there had been probable cause to issue the search warrant for his residence.

## ANALYSIS

Before we may reach the merits of the defendant's search issue, we must first determine if he has complied with the requirements for certifying a question of law to this court. Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure provides that an appeal lies from any judgment of conviction upon a plea of guilty or nolo contendere if:

> (i) The defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the state and of the court the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:

-3-

(A) the judgment of conviction, or other document to which such judgment refers that is filed before the notice of appeal, must contain a statement of the certified question of law reserved by defendant for appellate review;

(B) the question of law must be stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;

(C) the judgment or document must reflect that the certified question was expressly reserved with the consent of the state and the trial judge; and

(D) the judgment or document must reflect that the defendant, the state, and the trial judge are of the opinion that the certified question is dispositive of the case[.]

. . . .

(iv) The defendant explicitly reserved with the consent of the court the right to appeal a certified question of law that is dispositive of the case, and the requirements of subsection (i) are met, except the judgment or document need not reflect the state's consent to the appeal or the state's opinion that the question is dispositive.

Tenn. R. Crim. P. 37(b)(2)(i), (iv). In State v. Preston, 759 S.W.2d 647 (Tenn. 1988), our supreme court emphasized that a defendant must meet certain conditions in order to properly preserve an issue of law pursuant to Rule 37:

This is an appropriate time for this Court to make explicit to the bench and bar exactly what the appellate courts will hereafter require as prerequisites to the consideration of the merits of a question of law certified pursuant to Tenn. R. Crim. P. 37(b)(2)(i) or (iv). Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a T.R.A.P. 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and

-4-

review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise. Without an explicit statement of the certified question, neither the defendant, the State nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive of the case. Most of the reported and unreported cases seeking the limited appellate review pursuant to Tenn. R. Crim. P. 37 have been dismissed because the certified question was not dispositive. Also, the order must state that the certified question was expressly reserved as part of a plea agreement, that the State and the trial judge consented to the reservation and that the State and the trial judge are of the opinion that the question is dispositive of the case. Of course, the burden is on defendant to see that these prerequisites are in the final order and that the record brought to the appellate courts contains all of the proceedings below that bear upon whether the certified question of law is dispositive and the merits of the question certified. No issue beyond the scope of the certified question will be considered.

Id. at 650.

There was both a judgment form and an "Order Certifying Question of Law" filed in this case. The judgment form, filed September 17, 2001, at 2:00 p.m. and apparently prepared by the assistant district attorney general, states: "Pursuant to Tenn. R. Crim. P. 37(b)(2)(iv), defendant reserves with the consent of the court the right to appeal a certified question of law that is dispositive of the case, to wit: whether there was probable cause to issue the search warrant." Filed contemporaneously, although not referenced in the judgment form, was the trial court's "Order Certifying Question of Law," prepared by defense counsel, which states in pertinent part:

With the consent of the Court and the consent of the District Attorney General, the defendant's plea explicitly reserves the right to appeal a certified question of law that the trial Court and District Attorney General agree is dispositive of the case, to-wit:

On the 14th day of June, 2001, defendant filed a Motion to Suppress all evidence and/or materials seized as the result of illegal, invalid search of his home and curtilage on February 12, 2001, by officers of the Union City Police Department. The motion to suppress was heard and denied on July 5, 2001. The issues certified for appeal are those presented in the motion to suppress previously filed by the defendant, specifically: (1) law enforcement officers, including [O]fficer Shawn Palmer, did not have probable cause to seek the issuance of a search warrant for the defendant's home; (2)

the affidavit for search warrant is invalid and improper and no search warrant should have issued based upon its allegations; (3) the invalid search warrant resulted in an illegal search and seizure, in violation of defendant's constitutional rights; (3) [sic] defendant was illegally arrested and the arrest warrants issued in this cause are invalid, illegal and improper.

Defendant's position was that the affiant for the search warrant, [O]fficer Palmer, relied upon hearsay information from another officer, who had apparently obtained the information from another person, who was not identified as a criminal or citizen informant, and that the officers went into an "open field" behind defendant's residence, or the curtilage to his residence, and looked into defendant's vehicle, stating they saw a plastic bowl and jug in the seat; he stated that the allegations of the affidavit for search warrant were insufficient and the officers had no probable cause. Defendant further stated in his motion that the affidavit did not pass the "basis of knowledge" and "veracity" test of ***Aguilar-Spineli*** [sic] with regard to the informant. Further, defendant held that the affidavit for search warrant did not state sufficient information about events leading up to the seeking of the search warrant or the reliability of the other officer's informant (second-hand information to the affiant), and provided insufficient corroborating information concerning these events, activities and allegations. He also argued that he was illegally arrested.

Although a defendant may reserve a question of law under Tennessee Rule of Criminal Procedure 37(b)(2)(iv) without the State's consent, the Advisory Commission Comments to the rule explain that subsection (iv) "would only apply where there was no plea agreement and the defendant pled to the charge with the court imposing sentence." Tenn R. Crim. P. 37, Advisory Commission Cmts.; see also State v. Carlos E. Bryan, No. M2001-02705-CCA-R3-CD, 2002 WL 31769200, at *1 (Tenn. Crim. App. Dec. 11, 2002) (dismissing appeal purporting to be filed "pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(iv)," because record demonstrated that plea was negotiated and none of the documentation filed in the case reflected the State's consent to the certified question). Here, since the defendant's guilty plea was the result of a negotiated plea agreement, he had the responsibility to ensure that the judgment or order certifying the question of law not only stated that the certified question was expressly reserved as part of a plea agreement, but also that the State, as well as the trial court, consented to the reservation and agreed that the issue was dispositive of the case. See Preston, 759 S.W.2d at 649. Thus, we agree with the State that the judgment form, standing alone, is insufficient to satisfy the requirements for certifying a question of law to this court. However, based on our supreme court's recent decision in State v. Armstrong, ___S.W.3d___, 2003 WL 245506 (Tenn. 2003), we disagree with the State that the trial court's

-6-

contemporaneously filed order certifying the question of law, which clearly meets all the Preston requirements, was insufficient to cure the defects of the judgment.[1]

The Armstrong opinion was released after the briefs were filed in the instant case. The defendant in Armstrong entered into a negotiated plea agreement with the State that was conditioned upon his right to appeal a certified question of law, but the final judgment failed to contain any statement of the certified question or to reference any other document that stated the question. Id. at *1. Two days after the final judgment was filed, the trial court entered an "Order Allowing Appeal After Guilty Plea on Certified Question of Law," which stated that the defendant was expressly reserving a question of law with the consent of the trial court and the State, and that both the court and the State were of the opinion that the issue was dispositive of the case. Id. at *1-2. The order additionally contained a full statement of the question reserved on appeal. Id. at *1 n.3. Our supreme court determined that the trial court's subsequently filed order of correction met the Preston requirements for certifying a question of law for appeal because it was filed before the defendant's filing of his notice of appeal, while the trial court maintained jurisdiction over the case. Id. at *4. The Armstrong court explained its reasoning:

> In the present case, the trial court filed a corrective order *nunc pro tunc* two days after the final judgment was entered and before the defendant's filing of a notice of appeal. Unlike [State v.] Pendergrass [937 S.W.2d 834 (Tenn. 1996)] and [State v.] Irwin, [962 S.W.2d 477 (Tenn. 1998)] therefore, the remedial action was taken while the trial court maintained jurisdiction over the case. Moreover, the corrective order entered by the trial court complied with all of the Preston requirements: it detailed the question of law certified for appeal; it stated that the question had been reserved for appeal following the defendant's nolo contendere plea; and it stated that the issue was dispositive of the case. See Preston, 759 S.W.2d at 650. Although the final judgment itself did not make reference to a certified question of law, the corrective order was filed *nunc pro tunc* to May 22, 2001, *i.e.*, the date the final judgments were entered while the trial court had

---

[1]Because the judgment form is deficient in other respects, we need not address whether its phrasing of the question on appeal as "whether there was probable cause to issue the search warrant" fails to clearly identify the scope and limits of the legal issue reserved. We note, however, that this court has found similarly phrased questions sufficient to meet Preston requirements. See, e.g., State v. Harris, 919 S.W.2d 619, 621 (Tenn. Crim. App. 1995) (finding statement that identified the issue as "[t]hat is, the validity of the search of the defendant's property where the marijuana was found" sufficient to clearly identify the scope and limits of the legal issue reserved); see also State v. Adam George Colzie, No. M1998-00253-CCA-R3-CD, 1999 WL 1074111, at *3 (Tenn. Crim. App. Nov. 30, 1999) (concluding that statement identifying issue as "whether the arrest of the defendant and subsequent search of his car conformed with the Fourth Amendment of the United States Constitution and Article I, Section 7 of the Tennessee Constitution" was sufficiently detailed to clearly identify and limit the issue of law on appeal); State v. Stephen J. Udzinski, No. 01C01-9610-CC-00431, 1998 WL 44922, at *3 (Tenn. Crim. App. Feb. 5, 1998) (finding "[w]hether or not the affidavit in support of the search warrant establishes probable cause" sufficient to satisfy Preston requirements).

jurisdiction in the case to correct omissions or deficiencies in the record under Rule 36 of the Tennessee Rules of Criminal Procedure.

Id.

The transcript of the guilty plea hearing in the instant case clearly demonstrates that all parties involved understood the defendant's guilty plea was conditioned on his right to appeal the search issue, and that both the trial court and the State consented to the reservation of the issue on appeal and agreed that it was dispositive of the case. Moreover, although the judgment form failed to reference the "Order Certifying Question of Law," the documents were filed contemporaneously, while the trial court maintained jurisdiction over the case. We note that the contemporaneously filed order was not labeled as an amendment to the judgment. However, the Armstrong court makes it clear that we must look to the substance of a trial court's "curative" order, rather than to its label, in determining whether it satisfies the Preston requirements:

> Similarly, while as a matter of form any order which seeks to correct omissions or deficiencies in the judgment under Rule 36 should be labeled an "amendment" of the judgment, we must look to the substance of the trial court's curative action. Accordingly, the circumstances of this case demonstrate that the requirements of Preston were met and that the defendant properly reserved a certified question of law for appeal.

Id.

The better practice in this case would have been for the judgment form to reference the trial court's order certifying the question of law. However, since the order, which complies with all of the Preston requirements, was filed while the trial court maintained jurisdiction in the case, we conclude that the defendant has properly certified his question of law for appeal and that we, therefore, have jurisdiction to reach the merits of the search issue he raises on appeal.

When this court reviews a trial court's ruling on a motion to suppress evidence, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The party prevailing at the suppression hearing is afforded the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998). The findings of a trial court in a suppression hearing are upheld unless the evidence preponderates against those findings. See id. However, the application of the law to the facts found by the trial court is a question of law and is reviewed *de novo*. See State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997).

The defendant contends that Officer Palmer's affidavit in support of the search warrant for his property was insufficient to establish probable cause. He asserts that the fact that the police

officers smelled an odor and saw plastic bottles on the ground behind his house and in the back of his pickup truck was not sufficient, in itself, to support a reasonable ground of suspicion on the part of Officer Palmer that there would be any drug evidence in the defendant's residence. The State contends that Officer Palmer's affidavit was sufficient to establish probable cause for the search warrant and that the trial court did not, therefore, err in denying the defendant's motion to suppress.

Under both the Tennessee and United States Constitutions, no search warrant may be issued except upon probable cause, which has been defined as "a reasonable ground for suspicion, supported by circumstances indicative of an illegal act." State v. Henning, 975 S.W.2d 290, 294 (Tenn. 1998). Tennessee requires a written and sworn affidavit, "containing allegations from which the magistrate can determine whether probable cause exists," as "an indispensable prerequisite to the issuance of a search warrant." Id. Moreover, the affidavit must contain more than mere conclusory allegations on the part of the affiant. Id. A finding of probable cause made by an issuing magistrate is entitled to great deference. State v. Yeomans, 10 S.W.3d 293, 297 (Tenn. Crim. App. 1999) (citing State v. Melson, 638 S.W.2d 342, 357 (Tenn. 1982), cert. denied, 459 U.S. 1137, 103 S. Ct. 770, 74 L. Ed. 2d 983 (1983)). Therefore, the standard to be employed in reviewing the issuance of a search warrant is "whether, in light of all the evidence available, the magistrate had a substantial basis for finding probable cause." State v. Meeks, 876 S.W.2d 121, 124 (Tenn. Crim. App. 1993) (citing State v. Jacumin, 778 S.W.2d 430, 431-32 (Tenn. 1989)).

Officer Palmer's affidavit in support of the application for search warrant states in pertinent part as follows:

> 1.    I Shawn Palmer am a patrolman with the Union City Police Department. I am a certified police officer and have worked for the Union City Police Department for four years. I am also assigned to the 27th Judicial District Drug Task Force Clandestine Lab Enforcement Team (CLET). On July 2000 I was certified by Natural Environmental Systems in the detection, evaluation and processing of illegal clandestine laboratorys [sic]. I have also received training in undercover drug investigations and drug interdiction since being assigned to the drug task force (CLET) team. I have been involved in the investigation and dismanteling [sic] of numerous methamphetamine labs. I have also testified numerous times in both General Sessions and Circuit Courts of Obion County in matters related to the manufactor [sic] of methamphetamine labs. I have also been recognized as an expert witness in methamphetamine labs in the Circuit Court of Obion County Tennessee. The two most recent labs in which I was involved in investigating and dismanteling [sic] were on 02-08-01 and 02-08-01 in Weakley County Tennessee.
>
> 2.    On 02-12-01 I Shawn Palmer was notified by another Drug Task Force (CLET) Team member Jeff Jackson that a

methamphetamine lab could be detected in the area of Maple Street Union City, Obion County Tennessee. I and Jeff Jackson went to the above area. Once in the area I did smell the distinct odors associated with the manufactor [sic] of methamphetamine, comming [sic] from 433 Maple St. The residence of Paul Wright DOB 12/10/1959. Behind the residence in an open field. I did observe a 12 oz plastic bottle that had had a hole eaten through the bottom an[d] which contained a chemical residue which I know through training and experience to have been used as a gas generator. That contained hydrochrolic [sic] gas which is used in the manufactor [sic] of methamphetamine. Also a vehicle red white Ford pick up truck located at the dead end of Maple St. Tag # 206 LJD which is registered to Paul and Teresa Wright. Did contain a clear plastic bowl which contained a redish [sic] and white crushed pill substance beleived [sic] to be Suphedrine tablets. A precursor in the manufactor [sic] of methamphetamine. Located in the vehicle next to the pill residue was a 1 gallon plastic jug which had the bottom eaten out by a chemical substance. The jug also contained chemical residue beleived [sic] to be a type of acid used to produce a hydrochrloic [sic] gas used in the manufactor [sic]. Both these items were in plain view.

3.      I know through training and experience that persons involved in the manufacture of methamphetamine will secrete chemicals, glassware finished products and chemical by products waste at various location[s], including buildings, residences, storage buildings and curtilage and property under their control; will also transport and store substances in vehicles under their control.

4.      Approximately 3 weeks prior to 02-12-01 Paul Wright was stopped by a Union City police officer behind E-Pak located in the 400 block of West Reelfoot Avenue Union City, Obion County, Tn. Two days later I was called to the above location were [sic] officers had found the remains of a methamphetamine lab located were [sic] Paul Wright was sitting. One day later I was called to the same location were [sic] officers had found a fully functional lab. Further investigation I did find that Paul Wright had been fired from Williams Sausage for stealing anhydrous ammonia. This event was captured on survailance [sic] video. Through training and experience I know that there is no ligigement [sic] use in the home for anhydrous ammonia outside the use in farm crop production. Also anhydrous ammonia is a key chemical used in the manufacture of methamphetamine.

The defendant argues that Officer Palmer's affidavit raises a number of unanswered questions, including who informed the officers that a methamphetamine laboratory could be detected in the vicinity of his home and, if the information was supplied by a criminal informant, whether the informant passed the Aguilar-Spinelli two-pronged basis of knowledge and veracity test;[2] why the officers went "directly" to his residence; what probable cause the officers had to go into a field behind his house or to "go snooping and sniffing" around his vehicle; and how Officer Palmer was able to determine, merely by looking, what the plastic containers in his vehicle contained.

In denying the defendant's motion to suppress, the trial court made the following findings of fact and conclusions of law:

> This is one of the most thorough jobs that I've ever seen, as far as providing information to support the search warrant. I think the officer did an excellent job in this case. I think they had the right, as set forth what they did, what they found. I see no constitutional violation or any other violation as far as the defendant. Everything that they observed, which they reported to the magistrate, was there for anyone to see. The motion is overruled.

Because of the numerous complaints the defendant makes as to the sufficiency of the search warrant affidavit, we will paraphrase it, before reviewing his claims. The affidavit of Officer Shawn Palmer states that he has substantial experience in the detection and investigation of "meth" labs and went with another officer to an area in Union City, where he smelled, coming from the residence of the defendant, the distinct odor emitted as methamphetamine is manufactured. In an open field behind the defendant's residence, Officer Palmer found a plastic bottle with the residue of a substance he recognized as used in the manufacture of methamphetamine, and saw, as well, in plain view in the defendant's pickup truck parked on the street nearby, a plastic bowl and a jug, each containing substances which he recognized as being used in the manufacture of methamphetamine. Three weeks earlier, the defendant had been stopped by another police officer at another location in Union City where, two days after the stop, the remains of a "meth" lab were found and, the day after that, a functional "meth" lab was found at the same location. Officer Palmer learned that the defendant had been fired from his job because he stole from his employer, as recorded on a surveillance video, anhydrous ammonia, a chemical used in the manufacture of methamphetamine.

In spite of the defendant's apparent belief that a criminal informant must have told Investigator Jackson that a methamphetamine laboratory could be detected in the vicinity of his residence, there was no evidence that any informant was involved in the case. The affidavit contains a thorough and detailed account of the investigation and circumstances that led the police officers

---

[2] See State v. Jacumin, 778 S.W.2d 430 (Tenn. 1989) (adopting two-pronged standard, based on Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), to be used when affiant relies on hearsay information supplied by a confidential criminal informant).

to the defendant's home and vehicle and to the objects they spotted on the ground outside his home and inside his vehicle. The affidavit also contains a lengthy paragraph detailing Officer Palmer's training and experience in the detection of methamphetamine laboratories, sufficient to explain how he was able to recognize the odors produced by the manufacture of the drug and the plastic bottles and chemical residue associated with the drug's manufacturing process. The defendant's arguments as to the insufficiency of the search warrant affidavit ignore the core facts that Officer Palmer did not need to have probable cause to go to a spot near the defendant's property, where he recognized, coming from the defendant's property, an odor emitted by the manufacturing process of methamphetamine and, still not having entered the defendant's property, saw containers with residue used in the manufacture of methamphetamine.

The defendant also argues that paragraph four of the affidavit, which states that three weeks earlier a police officer had stopped him behind a grocery store in the same location that a methamphetamine laboratory was later discovered, contains "grossly irrelevant" and stale information, which should not have been relied on to establish probable cause for the issuance of the search warrant for his property.

It is not surprising that an officer, attempting to establish probable cause to conduct a search, would include as much information as possible in a search warrant affidavit, including the defendant's proximity, several weeks earlier, to a location where drug labs were found. Probable cause was established by the officers' observations the same day the search warrant was obtained.

The record fully supports the findings and conclusions of the trial court that the search warrant affidavit was sufficient to establish probable cause for a search of the defendant's property.

## CONCLUSION

We conclude that the trial court's "Order Certifying Question of Law," which was filed contemporaneously with the final judgment and which complied with all the Preston requirements, was sufficient to properly certify the defendant's question of law to this court. We further conclude that the evidence fully supports the trial court's finding that there was probable cause for the search warrant for the defendant's property. Accordingly, we affirm the order of the trial court.

_____
ALAN E. GLENN, JUDGE

-12-