FILED
03/25/2024
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 9, 2024 Session

## STATE OF TENNESSEE v. SHATARA EVETTE JONES

**Appeal from the Criminal Court for Davidson County**
**No. 2016-D-1979    Jennifer Smith, Judge**

_____

**No. M2022-01620-CCA-R3-CD**

_____

In this delayed appeal, Defendant, Shatara Evette Jones, appeals her conviction for first degree murder for which she received a mandatory life sentence. On appeal, Defendant challenges: 1) the trial court's restricting her right to cross-examine a State's witness; 2) the trial court's denial of her motion to dismiss, pursuant to *State v. Ferguson*, based on the State's failure to preserve evidence; 3) the trial court's denial of her motions to suppress her statement to police and cell phone data; 4) the trial court's exclusion of evidence of the victim's gang involvement and a rap video in which he is depicted holding a gun; 5) the trial court's omission of an instruction in the written jury instructions; and 6) the sufficiency of the evidence of her conviction. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and JILL BARTEE AYERS, JJ., joined.

Erin D. Coleman (on appeal) and Nathan Cate (at trial), Nashville, Tennessee, for the appellant, Shatara Evette Jones.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Doug Thurman and Kristen Stonehill, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

*Trial*

On May 27, 2016, Defendant asked Tondrick Chandler to drive her to the Knollcrest Apartment Complex to "[p]ick up some money." Mr. Chandler picked up Defendant around 5:00 p.m. Defendant sat in the front passenger seat and began sending text messages from her cell phone. When they arrived at the apartment complex, Defendant directed Mr. Chandler to park beside a dumpster. Mr. Chandler backed his maroon Dodge Caravan minivan into a parking space beside a dumpster, where he spotted a large mirror that he wanted to sell for scrap. Defendant remained inside the vehicle while Mr. Chandler loaded the mirror into his vehicle. Mr. Chandler returned to the driver's seat and adjusted the radio and chatted with Defendant. Soon after, he saw the victim, 14-year-old Ladarrius Gentry, approach the passenger side of the vehicle. Mr. Gentry dropped a baggie of pills in Defendant's hand. Defendant then withdrew a firearm from her jacket and said, "'This is what I got for you.'" She then shot at the victim. The victim began to run, and Defendant got out of the vehicle and continued to fire at him. Defendant returned to the vehicle and ordered Mr. Chandler to drive her to Dodge City, which he did.

Mr. Chandler did not contact the police that day. He saw a photo of his vehicle on the news that night and went to the police station the following morning and spoke to detectives. Mr. Chandler had never seen the victim before, and he did not know Defendant had been carrying a gun. On cross-examination, Mr. Chandler testified that he saw the victim put his hands in his pockets and lean into the vehicle before Defendant shot him. On redirect, Mr. Chandler answered that he did not see the victim try to take anything from Defendant.

Sergeant Ryan Sabel, of the Metro Nashville Police Department ("MNPD"), was the first officer to respond to the shooting. When he arrived at 5:48 p.m., he saw a small crowd of people gathered around the victim and giving aid to him. The victim had a gunshot wound to his torso, and he had "a very faint pulse." After the victim was transported to the hospital, Sergeant Sabel secured the scene.

MNPD Detective Anthony Heil arrived at the apartment complex shortly thereafter and determined that security cameras had recorded the incident. Detective Heil reviewed the video footage, which showed that a maroon minivan entered the complex at 5:37:50 p.m. At 5:39:34 p.m., the victim appeared to retrieve an item near the dumpster and walk down the sidewalk. He appeared to look at his cell phone as he walked. At 5:41:05 p.m., the victim approached the maroon minivan. Eight seconds later, the victim fled from the minivan. Defendant exited the vehicle and chased the victim with her arm outstretched, pointing a gun toward him. The surveillance video of the parking lot at Knollcrest Apartments was admitted into evidence and shown to the jury.

MNPD Crime Scene Investigator Kayla Fulton documented and collected evidence found at the scene, which included three Hornady .380 automatic cartridge casings, a cell phone "in pieces" on the sidewalk, an empty beer bottle, a shirt, a sweatshirt, and blood.

MNPD Detective Christopher Cote, the lead detective in the case, arrived at the scene at around 7:30 p.m. He spoke to the victim's cousin and mother. The victim's mother identified the cell phone found at the scene as the phone she bought for the victim. Detective Cote sent the cell phone to be analyzed by Detective Chad Gish. Detective Gish determined that the last phone number the victim called belonged to Defendant, who was saved in the victim's contacts list as "Duce Dirty." The victim placed the call at 5:41 p.m., and the call lasted approximately seven seconds. Detective Cote also searched Facebook and discovered that the phone number was associated with an account belonging to "Duce Dirty." The Facebook profile photo of "Duce Dirty" looked "very, very similar" to Defendant.

The following morning, Detective Cote learned that MNPD Chaplain James Duke "had been in touch with [Defendant] and was willing to bring her into the Madison Precinct to talk." Detective Cote spoke to Defendant that morning, and Defendant was arrested that afternoon. MNPD Detective James Bledsoe interviewed Mr. Chandler the same day. Mr. Chandler told Detective Bledsoe the location of the maroon minivan. Detective Bledsoe later located the minivan at a housing complex at 2480 25th Avenue North in Nashville. He saw a cartridge casing "just sitting there" "between the edge of the windshield wiper and the windshield." It was a Hornady .380 casing. The vehicle was processed for evidence. MNPD Crime Scene Investigator Mark Rosenfeld recovered latent fingerprints from pink cups and a bag of chips inside the vehicle; however, a forensic examination of the latent fingerprints did not reveal a match to Defendant. Investigator Rosenfeld also swabbed the door handles for trace DNA samples; however, the swabs were not analyzed for DNA.

On May 28, 2016, Detective Bledsoe and MNPD Lieutenant William Mackall went to Defendant's grandmother's house and retrieved Defendant's cell phone. Upon the issuance of a search warrant, a data extraction of the phone was performed, which revealed that Defendant began searching for news articles about the shooting within "a couple of hours" after it occurred. She also accessed MNPD's Twitter account, which contained a statement prepared by the public affairs office about the incident. All of the text messages and phone calls between Defendant's phone and the victim's phone had been deleted from Defendant's phone but were later recovered.

Detective Cote testified that he and MNPD Detective Garrett Kidd interviewed Bertha Tipton, "a witness who was sitting in her window and stated she observed what happened." Detective Cote testified that Detective Kidd wrote a report about what Ms.

Tipton said in her interview. He testified there "may have been" a recording of the interview, but he did not know what happened to the recording. He testified, "I do recall that it didn't record at the time. Detective Kidd made a notation later on that it didn't record or something like that."

Dr. Miguel Laboy, of the Nashville Medical Examiner's Office, performed an autopsy on the victim and concluded that the victim died from multiple gunshot wounds and determined that the manner of his death was homicide. The victim suffered three gunshot wounds: one to the chest from an indeterminate range; one to the back from an indeterminate range; and one to the right thigh from an indeterminate range.

At the conclusion of the State's case-in-chief, the trial court granted Defendant's motion for judgment of acquittal as to count two of the indictment, finding that there was no evidence that Defendant killed the victim during the perpetration or attempt to perpetrate a theft.

Defendant did not testify or present any additional proof. The jury found Defendant guilty of first degree murder, and the trial court imposed a mandatory life sentence.

Defendant filed a motion for new trial, which the trial court dismissed as untimely. Defendant subsequently filed a limited petition for post-conviction relief and a second petition for post-conviction relief, both alleging ineffective assistance of counsel based on trial counsel's failure to file a timely motion for new trial. Upon examining the second petition, the trial court concluded that it was not in proper form because it was not signed or verified under oath by Defendant. The trial court granted Defendant thirty days to cure the defect, but Defendant did not file a verified petition, and the trial court dismissed her petition.

Defendant subsequently filed a pro se petition for post-conviction relief, again claiming ineffective assistance of counsel based on trial counsel's failure to file a timely motion for new trial, and the trial court appointed counsel. Appointed counsel filed a second motion for new trial, which the trial court denied after a hearing, and the trial court entered an order granting Defendant a delayed appeal.

### *Analysis*

#### *Exclusion of Hearsay Evidence*

Defendant asserts that the trial court improperly limited trial counsel's cross-examination of Mr. Chandler by ruling that the statement by Defendant to Mr. Chandler, "He tried to rob me" was inadmissible hearsay. Defendant argues that the court prevented

her from laying an appropriate foundation to permit the statement as an excited utterance. Defendant also denies that the hearsay statement was self-serving. The State contends that the trial court "properly acted as a gatekeeper" in excluding the statement.

During his cross-examination of Mr. Chandler, defense counsel asked Mr. Chandler about Defendant's behavior after she shot the victim. Defense counsel asked if Defendant was "flustered, scared[.] . . . Excited, nervous in that moment[,]" and Mr. Chandler answered affirmatively. Defense counsel then asked for a bench conference, at which he explained, "I will lay the foundation for what I expect to [be] an excited utterance. [D]efendant's statement immediately on getting back in the vehicle is ['] he robbed me, he tried to rob me.[']" The State argued that defense counsel had not laid the foundation for an excited utterance and that the statement was self-serving.

After hearing the arguments of counsel, the trial court determined that defense counsel had not laid a proper foundation "for any sort of excitement" and excluded the testimony. The trial court recessed for the day after Mr. Chandler's testimony and addressed the issue again the next morning:

> THE COURT: So before we adjourned yesterday, the Court excluded a statement that was reportedly made by [D]efendant to the witness, Tondrick Chandler, to the effect that the victim had tried to rob her before the shooting. Defense counsel at that time had argued that it was admissible as [an] excited utterance under Rule 803(2). The Court and the counsel had a bench conference about that and the Court excluded that as [a] self-serving statement. And it is well noted that the statement arose out of a circumstance that the defendant herself had created.
>
> The Court did look a little bit further at that issue after we adjourned yesterday and will now reaffirm it, but with some additional findings that I think is appropriate for clarity and for completeness.
>
> Those findings that are the shooting in question was a startling event for purposes of Rule 803(2), that the statement was offered by the defense -- that the statement offered was related to the shooting to the extent that it reported a justification for the shooting. Number three, that the statement was self-serving. And number four, that Tondrick Chandler's testimony that [D]efendant appeared to be upset and/or excited was inadequate in itself to establish that the statement was so spontaneous as to preclude the absence of reflection or fabrication. And number five, that that finding is particularly so given the absence of any proof at this point in the trial to support any

allegation that a[] robbery or an attempted robbery occurred on the day of the shooting.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). Hearsay is generally not admissible unless the statement in question falls under one of the exceptions contained in the Rules of Evidence or other law. Tenn. R. Evid. 802. For instance, hearsay is admissible when the declarant makes "[a] statement relating to a startling event or condition" and "was under the stress of excitement caused by the event or condition." Tenn. R. Evid. 803(2). To qualify as an "excited utterance," the statement must be made "at a time so near [the startling event or condition] as to preclude the idea of deliberation and fabrication." *State v. Gordon*, 952 S.W.2d 817, 820 (Tenn. 1997). The "time interval" between the statement and the startling event "is but one consideration in determining whether a statement was made under stress or excitement[.]" *Id*. The declarant's demeanor is also highly relevant. *State v. Banks*, 271 S.W.3d 90, 117 (Tenn. 2008).

"The standard of review for rulings on hearsay evidence has multiple layers." *Kendrick v. State*, 454 S.W.3d 450, 479 (Tenn. 2015). The "factual and credibility findings" made by the trial court when considering whether a statement is hearsay, "are binding on a reviewing court unless the evidence in the record preponderates against them." *Id*. (citing *State v. Gilley*, 297 S.W.3d 739, 759-61 (Tenn. Crim. App. 2008)). After giving appropriate deference to these findings, "the next questions—whether the facts prove that the statement (1) was hearsay and (2) fits under one the exceptions to the hearsay rule— are questions of law subject to de novo review." *Id*. "If a statement is hearsay, but does not fit one of the exceptions, it is inadmissible, and the court must exclude the statement. But if a hearsay statement does fit under one of the exceptions, the trial court may not use the hearsay rule to suppress the statement." *Kendrick*, 454 S.W.3d at 479; *see also Gilley*, 297 S.W.3d at 760-61.

Defendant complains that she was "never actually given the opportunity to lay the foundation for [t]his evidence" and that defense counsel was "interrupted before he had the opportunity to put on sufficient evidence to lay the foundation for an excited utterance." However, defense counsel was not interrupted, but rather he requested a ruling on the issue before any objection by the State and before laying the proper foundation for the excited utterance hearsay exception. Furthermore, Defendant did not request to make an offer of proof following the adverse ruling by the trial court.

We conclude that the record does not preponderate against the trial court's findings that although the shooting was a startling event for purposes of the excited utterance

exception, Mr. Chandler's testimony that Defendant was excited or scared was inadequate to preclude the idea that the statement was deliberate or fabricated.

Defendant also argues that her constitutional right to confront witnesses was unreasonably restricted by the trial court's exclusion of the statement as hearsay. The Confrontation Clause of the Sixth Amendment and article I, section 9 of the Tennessee Constitution provide criminal defendants with the right to physically face witnesses and the right to cross-examine witnesses. *See State v. Brown*, 29 S.W.3d 427, 430-31 (Tenn. 2000) (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987); *State v. Middlebrooks*, 840 S.W.2d 317, 332 (Tenn. 1992)). The Sixth Amendment and the Due Process Clause of the Fourteenth Amendment guarantee a criminal defendant the right to present a defense. *See id.* at 432 (citing *Taylor v. Illinois*, 484 U.S. 400, 408 (1988); *Washington v. Texas*, 388 U.S. 14, 23 (1976); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *State v. Sheline*, 955 S.W.2d 42, 47 (Tenn. 1997)).

Generally, the propriety, scope, manner and control of the cross-examination of witnesses rest within the sound discretion of the trial court. *State v. James*, 315 S.W.3d 440, 460 (Tenn. 2010) (citing *State v. Caughron*, 855 S.W.2d 526, 540 (Tenn. 1993); *State v. Dishman*, 915 S.W.2d 458, 463 (Tenn. Crim. App. 1995)). "This Court will not disturb the limits placed upon cross-examination by the trial court, unless the trial court has unreasonably restricted the right." *State v. Gentry*, 538 S.W.3d 413, 429 (Tenn. 2017). The right of cross-examination "is subject to the restrictions created by the applicable statutes, rules of evidence, rules of criminal procedure, and the common law rules created by the appellate courts." *State v. Adkisson*, 899 S.W.2d 626, 644-45 (Tenn. Crim. App. 1994).

The Tennessee Supreme Court has recognized that "[p]rinciples of due process require that a defendant in a criminal trial have the right to present a defense and to offer testimony." *State v. Flood*, 219 S.W.3d 307, 315-16 (Tenn. 2007) (citing *Chambers*, 410 U.S. at 294; *Brown*, 29 S.W.3d at 431). A defendant's right to present a defense is not without limits, and he or she must comply with established rules of evidence and procedure. *Chambers*, 410 U.S. at 302. In determining whether the exclusion of evidence violates a defendant's constitutional right to present a defense, this Court must consider:

(1) Whether the excluded evidence is critical to the defense;
(2) Whether the evidence bears sufficient indicia of reliability; and
(3) Whether the interest supporting exclusion of the evidence is substantially important.

*Flood*, 219 S.W.3d at 316 (citing *Brown*, 29 S.W.3d at 434-35; *State v. Rice*, 184 S.W.3d 646, 673 (2006); *State v. Rogers*, 188 S.W.3d 593, 614 (Tenn. 2006)).

Defendant cannot bypass the rules of evidence by asserting a constitutional violation. We have determined that the trial court properly excluded the statement as hearsay. Furthermore, we cannot say that the hearsay statement was critical to the defense. There was no evidence presented to support the contention that the victim attempted to rob Defendant before she shot him. Finally, we agree with the trial court that the statement was self-serving. Defendant asserts, "it is highly unlikely" that Defendant made the statement that the victim tried to rob her "for the express purpose of lessening her criminal liability[.]" We disagree. Given the absence of any proof that the victim attempted to rob Defendant, we agree with the trial court that Defendant's statement was an attempt to provide a justification for the shooting. For these reasons, Defendant is not entitled to relief on this issue.

*Ferguson Motion*

Relying on *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999), Defendant argues that her due process rights were violated when the State failed to preserve a recording of a police interview of a witness for the State. The State responds that even if the recording existed, Defendant could not establish that she would have been entitled to receive it.

At the conclusion of the State's case-in-chief, counsel for Defendant made an oral motion to dismiss the indictment, pursuant to *State v. Ferguson*, based on the State's failure to preserve a recorded interview with witness Bertha Tipton. The trial court determined that "the *Ferguson* factors do not support dismissal" and that there was "no proof to suggest that the State deliberately destroyed or misplaced the recording[,]" noting that Detective Cote testified "the failure to record may have been the result of an equipment failure or at most negligence." The trial court found that even if the State had a duty to preserve the recording, Defendant had not demonstrated "that the evidence would have played a significant role in the defense, given the available video evidence coupled with the eyewitness testimony of Tondrick Chandler."

In considering whether Defendant would be unable to obtain comparable evidence by other reasonably available means, the trial court noted that Detective Kidd had prepared an investigative supplement that summarized a telephone interview with Ms. Tipton, which stated that she was beside her window when she heard gunshots, and when she looked up, she saw a person wearing a gray hoodie and shorts, pointing a handgun at someone. The trial court found that nothing in the report indicated any interaction between the victim and Defendant before the shooting or that "Ms. Tipton's vantage from her apartment would have given her a better view of the incident than the multiple video cameras located at the apartment complex, which provided comparable evidence that is available to [D]efendant and has been presented to the jury."

"Every criminal defendant is guaranteed the right to a fair trial under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the 'Law of the Land' Clause of Article I, section 8 of the Tennessee Constitution." *Johnson v. State*, 38 S.W.3d 52, 55 (Tenn. 2001). "To facilitate this right, a defendant has a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to guilt or relevant to punishment." *Ferguson*, 2 S.W.3d at 915; *see Brady v. Maryland*, 373 U.S. 83, 87 (1963).

In *Ferguson*, our supreme court addressed "the factors [that] should guide the determination of the consequences that flow from the State's loss or destruction of evidence which the accused contends would be exculpatory." *Ferguson*, 2 S.W.3d at 914. First, a reviewing court must determine whether the State had a duty to preserve the lost or destroyed evidence. *Id*. at 917. "For this duty to arise, the [evidence] must be expected to play a significant role in [the defendant's] defense." *State v. Merriman*, 410 S.W.3d 779, 792 (Tenn. 2013). "Specifically, [the evidence] must have potential exculpatory value and be of such a nature that [the defendant] would be unable to obtain comparable evidence by other reasonably available means." *Id*.; *State v. Crass*, 660 S.W.3d 506, 513 (Tenn. Crim. App. 2022).

If the trial court concludes that the State lost or destroyed evidence that it had a duty to preserve, the trial court must then consider three factors to determine the appropriate remedy for the State's failure: (1) the degree of negligence involved; (2) the significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence used at trial to support the conviction. *Ferguson*, 2 S.W.3d at 917; *Merriman*, 410 S.W.3d at 785. "If the trial court concludes that a trial would be fundamentally unfair without the missing evidence, the trial court may then impose an appropriate remedy to protect the defendant's right to a fair trial, including, but not limited to, dismissing the charges or providing a jury instruction." *Merriman*, 410 S.W.3d at 785-86. This Court reviews a trial court's decision concerning the fundamental fairness of the trial under a de novo standard. *Merriman*, 410 S.W.3d at 790. However, we review the trial court's remedy under an abuse of discretion standard. *Id*.; *Crass*, 660 S.W.3d at 514.

With respect to Defendant's argument that the State should have preserved a recording of Ms. Tipton's statement to police, Defendant has not shown that a recording actually existed. Detective Cote testified that Detective Kidd wrote a report summarizing Ms. Tipton's interview. He testified that there "may have been" a recording of the interview, but he did not know what happened to the recording. He then testified, "I do recall that it didn't record at the time. Detective Kidd made a notation later on that it didn't record or something like that." The burden is on Defendant to show that evidence alleged

- 9 -

to have been lost or destroyed by the State actually existed. *See State v. Martin*, No. W2017-01610-CCA-R3-CD, 2018 WL 4677575, at *16 (Tenn. Crim. App. Sept. 28, 2018) (denying *Ferguson* relief when "the Defendant failed to prove that a second lineup ever existed"), *no perm. app. filed*. *Ferguson* simply does not apply to evidence that never existed. "[T]his [C]ourt has repeatedly refused to grant *Ferguson* relief when there was no proof that the alleged evidence existed." *State v. Sparks*, No. M2005-02436-CCA-R3-CD, 2006 WL 2242236, at *5 (Tenn. Crim. App. Aug. 4, 2006) (citations omitted), *no perm. app. filed*; *see also State v. Morton*, No. E2019-01755-CCA-R3-CD, 2022 WL 2301439, at *33 (Tenn. Crim. App. June 27, 2022), *perm. app. denied* (Tenn. Nov. 16, 2022).

Moreover, even if a recording of Ms. Tipton's statement existed, Defendant cannot demonstrate that the State had a duty to preserve it. Tennessee Rule of Criminal Procedure 16(a)(2), which deals with information not subject to disclosure to the defendant, excludes from discovery "statements made by state witnesses or prospective state witnesses." Tenn. R. Crim. P. 16(a)(2). In any event, we agree with the trial court's analysis that the evidence would not have played a significant role in the defense. Stronger evidence of Defendant's guilt was presented to the jury, including surveillance video of the shooting, Mr. Chandler's testimony, and cell phone data.

We conclude that Defendant has not shown that a recording of Ms. Tipton's statement existed, and even if it did exist, the State did not have a duty to preserve it. Accordingly, we affirm the trial court's denial of Defendant's motion to dismiss the indictment.

*Motions to Suppress*

Defendant contends that the trial court erred by not suppressing the contents of her cell phone and her recorded statement to police. As to her cell phone, Defendant asserts that Detective Cote's affidavit failed to establish probable cause to search her cell phone because it was overbroad and unspecific. As to her statement to police, Defendant acknowledges that the State did not introduce the statement at trial, but she argues that the State's decision not to introduce the incriminating statement "greatly prejudiced" her defense. The State responds that the trial court properly denied both motions to suppress.

In reviewing the trial court's ruling on a motion to suppress, the party prevailing in the trial court "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Bell*, 429 S.W.3d 524, 529 (Tenn. 2014). This Court must uphold the trial court's findings of fact unless the evidence preponderates against them. *Id.* at 528. "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier

of fact." *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). We review the trial court's application of the law to the facts de novo without a presumption of correctness to the trial court's conclusions of law. *State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001).

## *A. Cell Phone Data*

Prior to trial, Defendant filed a motion to suppress the data recovered from her cell phone, arguing that Detective Cote's affidavit failed to establish probable cause for a search warrant. In the affidavit, Detective Cote stated that an analysis of the victim's phone found at the scene of the shooting revealed phone calls and text messages "just prior to the homicide" between the victim's phone and a contact saved as "Duece [sic] Dirty" with the phone number associated with Defendant's cell phone. The messages indicated that they had arranged a meeting to conduct a drug transaction. Detective Cote stated that Defendant had admitted to shooting the victim but claimed she did so in self-defense and that the victim had tried to rob her. The affidavit identified the cell phone to be searched by its specific model, IMEI number, and phone number. Detective Cote also described the information he intended to retrieve from the cell phone, including text messages, address book entries, call history, and deleted content.

The trial court concluded that the affidavit established probable cause for the issuance of a search warrant. The court found that "the affidavit stated that there had been communications in the form of text messages and phone calls between [D]efendant and the victim 'just prior to the homicide.'" The trial court also found that the facts set forth by Detective Cote in his affidavit presented a "clear nexus" between Defendant's cell phone and the homicide. The court rejected Defendant's argument that the search of her cell phone was overly broad and denied her motion to suppress the contents of her cell phone.

Initially, we note that Defendant's argument in support of the issue of whether the trial court "erred by denying the motion to suppress [Defendant]'s cell phone statement" begins with her assertion that "there remains a question as to method of authentication of the cell phone presented at trial[.]" Defendant cites Tennessee Rule of Evidence 901 and asserts Detective Cote's testimony was insufficient to authenticate Defendant's cell phone records because "Detective Cote had insufficient knowledge to authenticate the cell phone's owner." The State responds that Defendant waived consideration of the issue by not including it in her motion for new trial. *See* Tenn. R. App. P. 3(e) ("[N]o issue presented for review shall be predicated upon error in the admission or exclusion of evidence, . . . , unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived."). We agree with the State.

Defendant's motion for new trial simply states, "The [c]ourt erred by denying the motion to suppress [Defendant's] cell phone." In a motion for new trial, the defendant

must set forth the factual grounds on which he or she relies, the legal grounds for the trial court's ruling, and a concise statement as to why the trial court's decision was in error. *State v. Lowe-Kelley*, 380 S.W.3d 30, 33-34 (Tenn. 2012) (quoting *State v. Hatcher*, 310 S.W.3d 788, 802 (Tenn. 2010) (internal quotation marks omitted)). The contents of the motion should direct the attention of the trial court and prevailing party to the asserted error, and the movant should specify the issues with sufficient certainty to enable the appellate court to determine whether the issue was first raised in the trial court. *Waters v. Coker*, 229 S.W.3d 682, 689 (Tenn. 2007) (citing *State v. Gauldin*, 737 S.W.2d 795, 798 (Tenn. Crim. App. 1987)). Grounds not raised in a motion for new trial are waived for purposes of appeal. *See Waters*, 229 S.W.3d at 689 (citing *Boyd v. Hicks*, 774 S.W.2d 622, 625 (Tenn. Ct. App. 1989)). Defendant has waived consideration of the issue of whether the cell phone records were properly authenticated at trial.

Regarding Defendant's challenge to the sufficiency of the affidavit in support of the search warrant, we conclude that the evidence does not preponderate against the trial court's finding that there was a "clear nexus" between Defendant's cell phone and the homicide and that the affidavit was specific and not overly broad.

Both the federal and state constitutions require probable cause for the issuance of a warrant. U.S. Const. amend. IV; Tenn. Const. art. I, § 7; *State v. Henning*, 975 S.W.2d 290, 294 (Tenn. 1998). Probable cause is defined as "a reasonable ground for suspicion, supported by circumstances indicative of an illegal act." *Henning*, 975 S.W.2d at 294. A finding of probable cause necessary for the issuance of a search warrant must be based upon evidence included in a written and sworn affidavit. *Id*.

The affidavit must state facts and not merely conclusory allegations. *State v. Tuttle*, 515 S.W.3d 282, 300 (Tenn. 2017); *Henning*, 975 S.W.2d at 294. "Probable cause generally requires reasonable grounds for suspicion, supported by circumstances indicative of an illegal act." *State v. Williams*, 193 S.W.3d 502, 507 (Tenn. 2006) (citing *State v. Stevens*, 989 S.W.2d 290, 293 (Tenn. 1999)). The determination of probable cause is made based upon consideration of the totality of the circumstances. *Tuttle*, 515 S.W.3d at 289. The issuing magistrate should use common sense when determining whether the affidavit supports a finding of probable cause. *State v. Carter*, 160 S.W.3d 526, 533 (Tenn. 2005).

Our standard of review in determining whether a search warrant is based upon probable cause is "whether, in light of all the evidence available, the magistrate had a substantial basis for finding probable cause." *State v. Meeks*, 876 S.W.2d 121, 124 (Tenn. Crim. App. 1993). "In reviewing the existence of probable cause for issuance of a warrant, we may consider only the affidavit and may not consider any other evidence known by the affiant or provided to or possessed by the issuing magistrate." *Carter*, 160 S.W.3d at 533. A supporting affidavit must establish a nexus between the criminal activity, the place to be

searched, and the things to be seized. *State v. Saine*, 297 S.W.3d 199, 206 (Tenn. 2009) (citing *State v. Reid*, 91 S.W.3d 247, 273 (Tenn. 2002)). "Courts also should consider the nature of the property sought, the normal inferences as to where a criminal would hide the evidence, and the perpetrator's opportunity to dispose of incriminating evidence." *Reid*, 91 S.W.3d at 275. "[U]nlike an affidavit in support of an arrest warrant, an affidavit seeking issuance of a search warrant need not implicate a particular person in the crime under investigation." *Tuttle*, 515 S.W.3d at 301 (citations omitted).

Defendant appears to suggest that detectives were only able to identify her as the owner of the cell phone after the extraction of the cell phone's data, which "ultimately led investigators to connect [Defendant] with the instant case." Defendant relies on testimony by Detective Gish, in explaining an internet search about the shooting on Defendant's cell phone "a couple of hours after the homicide had occurred," that detectives "didn't know who [D]efendant was at the time. We didn't know who had killed the victim." However, our reading of the cited testimony shows that Detective Gish was describing the search history found on Defendant's phone, which included a news article about the shooting shortly after the shooting occurred. He testified detectives did not know Defendant's identity "at the time" of the internet search. Regardless, however, detectives need not identify Defendant as the owner of the cell phone to obtain the search warrant for the cell phone based on that phone number's connection to the offense. Regarding detectives' identification of Defendant, the proof at trial clearly established that investigators identified Defendant based on a search of the victim's phone found at the scene, which revealed that Defendant was the last person with whom the victim communicated. After her interview with police, in which Defendant admitted to having shot the victim, detectives obtained a search warrant for the contents of Defendant's cell phone.

The affidavit in support of the search warrant expressly provided that there were phone calls and texts between the victim's phone and Defendant's phone immediately prior to the shooting, that they had arranged to meet to conduct a drug transaction, and that Defendant had admitted to shooting the victim. We agree with the trial court's conclusion that the affidavit established a "clear nexus" between Defendant's cell phone and the homicide. We also agree with the trial court's conclusion that the affidavit stated with specificity the information sought and was not overly broad. Defendant is not entitled to relief on this issue.

### B. *Defendant's Statement*

Regarding her statement to police, Defendant acknowledges that the State did not introduce the statement as evidence at trial, but nonetheless argues that the trial court erred by not suppressing it. Defendant also recognizes that the State's disclosure of evidence pursuant to Rule 16 of the Tennessee Rules of Criminal Procedure does not obligate the

State to present that evidence at trial. Defendant appears to suggest that the State's compliance with Rule 16 in providing the statement in discovery somehow prejudiced her defense because the State "knew or should have known that [t]rial [c]ounsel would place great weight on the use of this evidence by the State at trial[.]"

Prior to trial, Defendant filed a motion to suppress her statement, arguing that her "formal recorded statement was impermissibly tainted by her previous confession obtained while in custody and without the benefit of *Miranda* warnings." Defendant asserted she was only arrested "due to the dissemination of privileged communications made to a clergyman[.]" The State filed a response to Defendant's motion, asserting that Chaplain Duke did not arrest or question Defendant about the incident; therefore, any statements by Defendant to Chaplain Duke were not the result of a custodial interrogation. The State further asserted that the clergy-penitent privilege applies only to statements by the Defendant, not her mother, for the purpose of seeking spiritual counsel.

At a hearing on the motion, MNPD Chaplain James Duke testified that at the time of the offense, in addition to being a police officer and chaplain, he was a pastor at the church Defendant's mother attended. On May 28, 2016, Defendant's mother called him "very upset" and told him Defendant had shot someone who tried to rob her. Chaplain Duke called the MNPD's public information office to verify that there was a shooting at the apartment complex. He then contacted Defendant's mother to arrange a meeting with her and Defendant. Chaplain Duke was "off duty" and arrived in his personal vehicle. He testified, "I was going more or less as a pastor to assist the mother and intended to help [Defendant] as well, because she attended the church too and everything." Defendant agreed to go to the police station to give a statement to police. Chaplain Duke drove Defendant to the police station. He testified, "the only thing I said to her, 'well, just go tell your side of the story because it sounds like self[-]defense to me.'"

Detective Cote testified at the hearing that by the morning of May 28, he had identified Defendant as a possible suspect through a search of the victim's phone and surveillance video of the shooting. Detective Cote learned that "Chaplain Duke was in contact with [Defendant] and she would like to come in and talk willingly." Detective Cote and Detective Bledsoe conducted a recorded interview with Defendant at the police station. Detective Cote advised Defendant of her *Miranda* rights, and Defendant signed a waiver form. During the interview, Defendant admitted that the phone number found on the victim's phone belonged to her and that her nickname was "Duce Dirty."

In its written order denying Defendant's motion to suppress, the trial court found that Defendant was not under arrest when she met with Chaplain Duke, that she met with him voluntarily, and there was "no proof" that Defendant "made any statement to [Chaplain] Duke about the incident, let alone any communication that would have been

subject to the clergy-penitent privilege." The trial court further found that even if Defendant had made a statement to Chaplain Duke, there was no proof that the communication was made for the purpose of seeking spiritual counsel.

On appeal, Defendant has abandoned any issue of whether her communication with Chaplain Duke was privileged or whether her statement to detectives should have been suppressed. *See State v. Adkisson*, 899 S.W.2d 626, 635 (Tenn. Crim. App. 1994) ("When . . . a party abandons the ground asserted when the objection was made and asserts completely different grounds in the motion for a new trial and in this Court, the party waives the issue."). In her brief, Defendant argues instead that the State "violated the spirit of Rule 16," which requires the State to disclose a defendant's statement "if the [S]tate intends to offer the statement in evidence at trial." Tenn. R. Crim. P. 16(a)(1)(a). Defendant asserts that the adverse ruling by the trial court led her to prepare her trial strategy with the expectation that the statement would be presented during the State's case-in-chief.

The State relies on dicta in *State v. Henry*, No. M2013-02490-CCA-R3-CD, 2015 WL 226113, at *17 (Tenn. Crim. App. Jan 16, 2015), *no perm. app. filed*, and argues that it had no obligation to present Defendant's statement at trial because the statement was self-serving. However, the State offers no argument in support of its assertion that Defendant's statement was self-serving. In her statement to Detectives Cote and Bledsoe, Defendant both admitted that she shot the victim and claimed that the victim tried to rob her. She said she went to the apartment complex with Mr. Chandler to look for "scrap wood." While Mr. Chandler was retrieving a mirror from the dumpster, she saw a man with "little dreads" wearing a "wife-beater" and "peeking behind [] the trash can." The victim, wearing a black hoodie, then approached the vehicle and "grabbed [her] necklace" and was "pulling on her." She said, "he tried to go in my pockets but I was really scared so I just gave him my stuff. And then I just reached down for the gun and I just shot him like that." Then, "the dude with the little hair, like the little dreads, he ran through the building like that and he was shooting back. And so that why I hop outta the van and start shooting."

In *State v. Henry*, the defendant challenged the State's failure to introduce all of his statements to police pursuant to Tennessee Rule of Evidence 106, the rule of completeness. *Id*. at *16. Defendant Henry had given both a recorded statement at the scene and a subsequent unrecorded statement at the hospital. Noting that Rule 106 applies only to recorded or written statements, a panel of this Court concluded that the trial court did not abuse its discretion by preventing the defendant from questioning the detective about the substance of the hospital statement. *Id*. at *16-17. The panel further concluded that "the State had no obligation to present the defendant's self-serving statement." *Id*. at *17.

- 15 -

Our supreme court has held that the self-serving declarations of a criminal defendant are not admissible. *Moon v. State*, 242 S.W. 39, 54 (1921). In *Hall v. State*, 552 S.W.2d 417, 418 (Tenn. Crim. App. 1977), this Court, quoting Wharton's Criminal Evidence, 13th Edition, section 303, explained the reasoning for this rule as follows:

> "A declaration made by a defendant in his own favor, unless part of the res gestae or of a confession offered by the prosecution, is not admissible for the defense. A self-serving declaration is excluded because there is nothing to guarantee its testimonial trustworthiness. If such evidence were admissible, the door would be thrown open to obvious abuse: an accused could create evidence for himself by making statements in his favor for subsequent use at his trial to show his innocence."

First, we disagree with the State that Defendant's statement to Detectives Cote and Bledsoe was self-serving as it was detrimental to Defendant in that it was incriminating and contained statements that were contradicted by other evidence. Additionally, we observe that the rule against self-serving declarations by a defendant applies when the defendant attempts to introduce the statement. Here, Defendant complains that the State *did not* introduce her statement at trial. Nonetheless, we are aware of no authority and Defendant cites none that supports the proposition that the prosecution must introduce at trial an inculpatory statement by Defendant. Defendant is not entitled to relief on this issue.

*Motions in Limine*

Defendant contends that the trial court erred by granting the State's motions in limine to exclude evidence of the victim's alleged gang involvement and a rap video, which depicted the victim holding a gun. Defendant argues that the evidence would have been helpful to establish self-defense, that the victim was the first aggressor, and that she feared the victim. The State asserts that the trial court properly excluded the evidence.

It is well-established "that trial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of that discretion." *State v. McLeod*, 937 S.W.2d 867, 871 (Tenn. 1996). Tennessee Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Generally, relevant evidence is admissible, while irrelevant evidence is inadmissible. Tenn. R. Evid. 402. However, relevant evidence may be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice." Tenn. R. Evid. 403.

Generally, "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion[.]" Tenn. R. Evid. 404(a); *see also* Tenn. R. Evid. 404(b). However, when a defendant relies on a theory of self-defense, contending that the alleged victim of a violent crime was the first aggressor, the defense may offer evidence of the victim's prior history of violent conduct. *State v. Ruane*, 912 S.W.2d 766, 781-82 (Tenn. Crim. App. 1995), *abrogated on other grounds by State v. Rogers*, 992 S.W.2d 393, 401 (Tenn. 1999). To be clear, this Court has created "a distinction between evidence of prior acts of violence by the victim used to corroborate the defense theory that the victim was the first aggressor and that used to establish the defendant's fear of the victim." *Id*. at 779.

In cases in which a defendant's fear of the victim is relevant, the defendant must be aware of the prior violent acts before testimony concerning the acts will be admitted from the defendant. *Williams v. State*, 565 S.W.2d 503, 505 (Tenn. 1978); *see also State v. Hill*, 885 S.W.2d 357, 361 n.1 (Tenn. Crim. App. 1994). If the defendant is aware of the prior violent acts, she may testify about what she observed or had been told about the prior acts. *Id*. If the State questions the defendant's basis of knowledge concerning the prior violent acts, then the defendant may introduce the corroborating witnesses in rebuttal. *Id*. These witnesses may only testify as to what they told the defendant, not as to what they personally observed. *Id*.

In cases where it is alleged that the victim was the first aggressor and the defendant is unaware of the victim's prior bad acts, the defendant may offer evidence through the testimony of a third person to support this assertion. *Ruane*, 912 S.W.2d at 780. However, the evidence is "'at minimum, subject to the balancing test set forth in Tennessee Rule of Evidence 403.'" *State v. Sherrill*, No. M2009-01979-CCA-R3-CD, 2011 WL 1564009, at *7 (Tenn. Crim. App. Apr. 21, 2011) (quoting *State v. Houston*, No. W2006-00095-CCA-R3-CD, 2007 WL 1890650, at *8 (Tenn. Crim. App. June 29, 2007), *perm. app. denied* (Tenn. Nov. 19, 2007)). Finally, before a trial court can admit evidence of the victim's prior violent acts to corroborate the defendant's claim that the victim was the first aggressor, three requirements must be satisfactorily met: (1) the issue of self-defense must be raised by the proof and not simply by statements of counsel; (2) there must be a factual basis for the defendant's claim that the victim had first aggressor tendencies; and (3) the probative value of the evidence must outweigh the danger of unfair prejudice. *Ruane*, 912 S.W.2d at 781.

The State filed a motion in limine to exclude evidence of the victim's alleged gang involvement. At a pretrial hearing, the trial court considered the arguments of counsel and found there was no evidence "that [the victim's] gang affiliation played some role in [D]efendant's conduct on the day of the homicide." In a written order excluding the evidence, the trial court determined that it was not relevant to any issue in the case and that

- 17 -

there was no evidence to suggest that the shooting was gang-related or that Defendant "felt apprehension or fear on the day of the shooting due to any alleged gang ties of the victim." The court added, "I'm not saying that doesn't -- that you couldn't show that. I'm just saying there is nothing in front of me right now that raises that."

On appeal, Defendant argues that the trial court should have allowed evidence of the victim's gang involvement to rebut evidence that Defendant was untruthful and that she "devised the narrative of a robbery to justify the charges against her." The State asserts that Defendant "points to no [] examples in her brief, and none can be found in the record" of the State's putting either Defendant's or the victim's character at issue "at any point during the trial." In fact, Defendant's brief asserts that the State raised questions about Defendant's truthfulness when it "questioned Detective Cote, inquiring as to whether he saw anything on the surveillance video that would indicate [Defendant] was acting in self-defense, if he had any reason to believe she was being robbed, or whether her interview had provided any reason to believe [Defendant] had acted in self-defense."

We note that Defendant cites to a volume and page of the transcript on which this testimony does not appear. Rather, the record shows this testimony was elicited during an offer of proof by the defense, during which Detective Cote[1] testified, upon questioning by the State, that he had no reason to believe that Defendant acted in self-defense and that her statement contained inconsistencies. During the offer of proof, defense counsel asked Detective Cote if he did "any follow-up investigation on whether [the victim] was out there robbing people" and whether he found "evidence of [the victim] googling crimes committed by people he was associated with[.]" Detective Cote responded that investigators had looked at the victim's cell phone and social media accounts and "didn't see anything that was pertinent to the case."

Because the testimony inaccurately cited by Defendant was presented during an offer of proof, the State is correct that it did not open any "evidentiary doors" during trial about Defendant's character. To the extent Defendant asserts that the evidence was relevant to establish her fear of the victim, Defendant did not testify that she was aware of any prior incident of violent conduct by the victim.

To the extent Defendant asserts that the evidence was relevant to show the victim was the first aggressor, the first consideration, whether the issue of self-defense was raised by the proof, was only marginally satisfied, if at all. Mr. Chandler testified that he saw the victim drop a bag of pills in Defendant's hand, then Defendant drew her firearm and said,

---

[1] We note that the transcript states that Detective "[CHAD GISH] [was] called as a witness to offer proof on behalf of the defense," however, the immediately preceding discussion between the trial court and the parties indicates that it was Detective Cote whose testimony was offered by the defense.

"'This is what I got for you.'" Defendant then shot at the victim, who ran away from the vehicle, and Defendant got out of the vehicle and continued to fire at him. Surveillance video of the incident showed the victim approach the passenger side of Mr. Chandler's vehicle, the victim fleeing on foot, and Defendant exiting the vehicle and chasing the victim while pointing a gun toward him. The second consideration, whether there is a factual basis for Defendant's assertion that the victim had first aggressor tendencies, has not been established. Defendant presented no proof on which the trial court could find that the victim had first aggressor tendencies.

We agree with the trial court there was no proof offered that the shooting was gang-related or that the victim's alleged gang involvement had any relevance to the issues at trial. Accordingly, the trial court did not abuse its discretion by excluding evidence of the victim's gang involvement. Finally, any testimony suggesting that the victim's gang ties were the cause of the shooting, without further explanation, would have likely confused the jury.

Next, Defendant contends that she should have been able to present a rap video created by the victim in which the victim is holding a gun. She argues that the video would have bolstered her self-defense claim and demonstrated that the victim was the first aggressor. In its order granting the State's motion to exclude the evidence, the trial court found that the video was not relevant and that "Defendant's suggestion that the victim had the gun from the video in his possession at the time of the shooting is little more than speculation, which presents a danger of misleading the jury," because no firearm was recovered at the crime scene, and Defendant admitted in her statement to police that she never saw the victim with a gun before the shooting. The court further concluded that "evidence of the victim's prior possession of a weapon amounts to inadmissible propensity evidence under Tenn[essee] R[ule of] Evid[ence] 404."

Applying the same analysis and *Ruane* factors above, we conclude that the trial court did not abuse its discretion in excluding the evidence. The issue of self-defense was only marginally raised by the defense, and no proof was presented that the victim had first aggressor tendencies. Further, we agree with the trial court that the evidence would likely have confused the issues and misled the jury. Defendant is not entitled to relief on this issue.

*Sufficiency of the Evidence*

Defendant contends that the evidence was insufficient to establish that she committed first degree murder. When a defendant challenges the sufficiency of the evidence, the relevant question for this Court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). On appeal, "'the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Therefore, this Court will not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Instead, it is the trier of fact, not this Court, who resolves any questions concerning "the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This Court applies the same standard of review regardless of whether the conviction was predicated on direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011). "Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

First degree murder is the premeditated and intentional killing of another. T.C.A. § 39-13-202(a)(1). A premeditated act is one "done after the exercise of reflection and judgment." T.C.A. § 39-13-202(d). Premeditation requires a finding that "the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill preexist in the mind of the accused for any definite period of time." *Id*.

Premeditation is a question of fact for the jury's determination. *State v. Davidson*, 121 S.W.3d 600, 614 (Tenn. 2003). It may be established by any evidence which could lead a rational trier of fact to infer that premeditation was established by the proof as required by statute. *Id*. at 615. Courts frequently look to the circumstances surrounding a killing to discern the presence of evidence sufficient to support a finding of premeditation. *State v. Larkin*, 443 S.W.3d 751, 815 (Tenn. Crim. App. 2013).

Factors tending to support the existence of premeditation include: "the use of a deadly weapon upon an unarmed victim; the particular cruelty of the killing; declarations by the defendant of an intent to kill; evidence of procurement of a weapon; preparations before the killing for concealment of the crime, and calmness immediately after the killing." *Bland*, 958 S.W.2d at 660. The factors listed in *Bland* are not exhaustive, however. *State v. Adams*, 405 S.W.3d 641, 663 (Tenn. 2013). The nature of the killing or evidence establishing a motive for the killing may also support a conclusion that the crime was premeditated. *Id*. Lack of provocation by the victim, failure to render aid, and

destruction or secretion of evidence may also support an inference of premeditation. *Larkin*, 443 S.W.3d at 815-16 (citing *State v. Thacker*, 164 S.W.3d 208, 222 (Tenn. 2005); *State v. Lewis*, 36 S.W.3d 88, 96 (Tenn. Crim. App. 2000)). "Under *Bland*, shooting a retreating victim alone provides circumstantial evidence of premeditation." *State v. Dickson*, 413 S.W.3d 735, 746 (Tenn. 2013).

The evidence viewed in the light most favorable to the State established that Defendant, armed with a gun, asked Mr. Chandler to drive her to an apartment complex to meet the victim. She exchanged text messages with the victim to arrange a drug sale. After the victim gave Defendant a baggie of pills, Defendant pulled out her gun and said, "This is what I have for you." She fired her gun at the victim. The victim ran away, and Defendant exited the vehicle and continued firing, striking the victim in the chest, back, and thigh, killing him. Defendant then returned to the vehicle and ordered Mr. Chandler to drive her away from the scene. Defendant did render aid or call for help. This evidence is sufficient to sustain Defendant's first degree murder conviction.

*Jury Instructions*

Defendant asserts that she was denied a fair trial by the trial court's failure to give complete written instructions to the jury. Specifically, Defendant asserts that the written jury charge did not include an instruction as to the judgment of acquittal. The State responds that Defendant has waived the issue by failing to include the written instructions in the appellate record. The State further asserts that the trial court gave a proper oral instruction to the jury pursuant to *State v. Little*.

As to the State's waiver argument, the record contains both a transcript of the trial court's oral instructions to the jury and the trial court's written jury instructions. Contrary to the State's assertion, Defendant has not waived consideration of the issue by failing to include the jury instructions in the record. *See* Tenn. R. App. P. 24(b).

Addressing the merits of the issue, the procedural posture presented here is analogous to *State v. Little*, 402 S.W.3d 202 (Tenn. 2013), in which our supreme court considered whether a trial court should instruct the jury on charges dismissed as a result of the granting of a motion for judgment of acquittal. *Id*. at 214. The supreme court concluded that "the trial court did not err by failing to inform the jury that the [d]efendant had been acquitted of the robbery charges after those charges were dismissed at the conclusion of all the proof." *Id*. at 215. The court held, "it is sufficient for the trial court to inform the jury that the dismissed charges have been removed from the indictment, that no instruction concerning the dismissed charges will be provided, and that the jury should not speculate as to the removal of the dismissed charges or the absence of instructions on the dismissed charges." *Id*. The court further stated that an instruction limiting the jury's consideration

of the acquitted charge to possible motive for the remaining charge may be appropriate when requested by the defendant. *Id*.

After the trial court granted Defendant's motion for judgment of acquittal as to count two of the indictment, the court instructed the jury as follows:

> The second count of the indictment in this case charged [D]efendant with killing the victim during the perpetration or attempt to perpetrate a theft.
>
> The jury is instructed that that Count 2 has been removed from the indictment and you are directed not to speculate on any reason for that. It's strictly for a legal reason and not to -- for you to be considering that for any reason.
>
> The underlying allegation of theft, however, you may consider that solely to the extent that it might bear on motive in the case. But it is not going to be considered by you as a separate offense.

Defendant asserts that these oral instructions by the trial court do not comport to the instructions prescribed by the supreme court in *State v. Little* because they were not included in the written instructions and because the trial court did not inform the jury that no instructions on the dismissed charge would be provided or that it should not speculate as to the absence of such instructions. We disagree. The above instructions by the trial court sufficiently informed the jury as to the dismissed charge. Defendant is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE